# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| HALL CA-NV, LLC, | 3:18-cv-00124-RCJ-CBC |
| Plaintiff, | |
| v. | **ORDER** |
| LADERA DEVELOPMENT, LLC, | |
| Defendants. | |

Before the court is Plaintiff Hall CA-NV, LLC's ("Hall") motion to modify the subpoena duces tecum served on Kolesar & Leatham ("K&L") (ECF No. 40) by Defendant Ladera Development, LLC ("Ladera"). Hall's motion asserts that the subpoena served on K&L requires the disclosure of materials Hall claims are subject to the attorney-client privilege, the common interest privilege, and/or the work product doctrine. Hall seeks modification of the subpoena to prevent K&L from disclosing the materials Hall claims are protected. Ladera opposed (ECF No. 43) and Hall replied (ECF No. 44). The court granted Ladera leave to file a sur-reply. (ECF No. 50). The court heard oral argument on November 9, 2018 (ECF No. 53). Having considered all the above documents and oral argument, the motion is denied.

**I.     FACTUAL BACKGROUND[1]**

A.     The Cal-Neva Redevelopment

The current case is one of many lawsuits involving Hall and Ladera arising from the failed re-development of the Cal-Neva Lodge, which straddles the border of California and Nevada on the shores of Lake Tahoe. The re-development began in 2014

---

[1] The underlying facts of this case are extensive and known to the parties. Therefore, this order will only recite those facts necessary and relevant to the current motion.

by the New Cal-Nevada Lodge, LLC. ("Cal-Neva"). (ECF No. 23, ¶ 9). The general contractor on the project was Penta Building Group, LLC ("Penta"). (ECF No. 26, p. 9, ¶ 12(c)).

On September 30, 2014, Hall and Ladera loaned $29,000,000 and $6,000,000, respectively, to Cal-Nev for the project. (*Id.*, ¶¶10-13). Ladera obtained an insurance policy from Old Republic National Title Insurance insuring its loan priority. (*Id.*, ¶ 14). On this same date, Hall and Ladera entered into a separate agreement, known as the "Intercreditor Agreement." (ECF No. 23, ¶ 15). Pursuant to this agreement, Hall's loan was deemed the "Senior Loan" on the project while Ladera's loan was deemed the "Junior Loan." (*Id.*, ¶ 16). The agreement also contained a variety of provisions that defined the obligations, roles and rights of the parties in relation to one another and imposed a variety of obligations and restrictions on Ladera. (*Id.*)

### B. Penta Lien cases and Cal-Neva's Bankruptcy Proceedings

All did not go as planned and the project failed resulting in extensive litigation involving various entities associated with the project. For example, in April 2016, Penta filed a complaint seeking foreclosure of its mechanic's lien on the property in the Second Judicial District Court in Washoe County, Nevada against Hall, Cal-Neva and others. (*See* ECF No. 26, ¶ 25); *see also Penta Building v. New Cal-Neva Lodge, et. al.*, Second Judicial District Court, Nevada, Case No. CV16-00837.[2] Penta also filed a similar action against Hall in Placer County, California.[3] These cases are collectively referred to as the "Penta Lien cases."

At oral argument, Hall indicated it tendered a claim for representation to Old Republic for the claims on the Penta Lien cases in approximately August, 2016. In

---

[2]  The court takes judicial notice of this case and the filings in the litigation pursuant to Fed. R. Evid. 201.

[3]  At oral argument Hall indicated Ladera was also a party to these state court cases. However, a review of the docket in the Washoe County case showed no reference to Ladera nor was there any indication that Ladera made an appearance or was named as a related party. (*See* Docket Sheet, *Penta Building v. New Cal-Neva Lodge, et. al.*, Second Judicial District Court, Nevada, Case No. CV16-00837).

response, Old Republic selected the law firm of Kolesar & Leathem ("K&L") to represent Hall. At this point, Ladera was not involved these cases nor was it represented by K&L.

In the meantime, Cal-Neva filed for bankruptcy protection in California in July, 2016. (*See* ECF No. 23, ¶ 17). This case was ultimately transferred to United States Bankruptcy Court under Case Number BK-N-16-51282-GWZ. (*Id.*) In the fall of 2016, the Penta Lien cases were transferred to the bankruptcy court as adversary proceedings. *See, for example, Penta Building v. New Cal-Neva Lodge, et. al.*, Second Judicial District Court, Nevada, Case No. CV16-00837, Docket Entry Nos. 2, 3. The Nevada case was assigned Case No. BK-N-16-05036-GWZ (known as the "Hall Nevada Adversary"), while the California case was assigned Case No. BK-N-17-05003-GWZ (known as the "Hall California Adversary"). (ECF No. 40-2, p. 6, ¶ 5). Both cases were consolidated under the lead bankruptcy case. (*Id.*)

### C. Joint Representation by K&L of Hall and Ladera

It is unclear exactly when Ladera became involved in the bankruptcy proceedings outlined above. However, on March 8, 2017, K&L sent a letter to both Hall and Ladera regarding its joint representation of both entities in relation to those proceedings. (ECF No. 43-1). According to the letter, at that time, K&L represented Hall in the Hall Nevada Adversary case and the Hall California Adversary case under the lead Cal-Nevada bankruptcy case. (*Id.*, p. 2). However, K&L had also been asked to represent Ladera in a separate adversary proceeding, which was also consolidated under the lead bankruptcy case. (*Id.*, p. 3). This case was assigned Case No. BK-N-17-05007 (known as the "Ladera Adversary case").

Per the letter, the bankruptcy court had proposed and directed K&L to consolidate ALL three of the adversary proceedings – referred to as the "Consolidated Adversary Cases." (*Id.*) Per K&L, the consolidation of these adversary proceedings would result in K&L jointly representing both Hall and Ladera in the same matter. (*Id.*) K&L confirmed that it believed it could jointly represent both parties because all three cases involved "the same property and the same priority dispute with respect to the lien claimants." (*Id.*)

3

K&L also confirmed both Hall and Ladera "would be taking the same position with respect to the claims asserted" and the defense of the actions would be "aligned with respect" to all aspects of the claims. (*Id.*)

K&L stated "the purpose of the letter [was] to describe the proposed joint representation" of both parties and to "define the scope of said representation" in order "to secure the consent" of the parties to it. (*Id.*) There was no limitation placed on the scope of K&L's representation of either party nor were there any assertions or claims that K&L would have any independent relationship with either party. Both Hall and Ladera signed and returned the letter to K&L confirming their consent to K&L's joint representation of both parties in the Consolidated Adversary Cases. Thus, by March 8, 2017, K&L jointly represented both Hall and Ladera in the bankruptcy cases outlined above *without* limitation.

On August 14, 2017, Hall filed a lawsuit against Ladera in the Second Judicial District Court in Washoe County, Nevada. *See Hall CA-NV, LLC v. Ladera Development, LLC*, Case No. CV17-01526. (ECF No. 43-2; ECF No. 23, ¶ 20). In this case, Hall sought an injunction against Ladera in order to prohibit it from taking certain actions in the bankruptcy that Hall believed breached provisions of the Intercreditor Agreement. (ECF No. 23, ¶¶ 19-20). Upon being advised of this new case, K&L sent a second conflict waiver letter to both Hall and Ladera. (ECF No. 43-2).

In this second letter, K&L noted that Hall and Ladera had previously consented to K&L's *joint representation* of the entities in all of the adversary proceedings described above. (*Id.,* p. 2). However, in light of the new lawsuit between the parties, K&L was sending a second conflict waiver letter to again "confirm and memorialize" the actual and potential conflicts of interest for the continued joint representation and to obtain "consent to [K&L's] continued representation" of both parties in the Consolidated Adversary Cases. (*Id.*) Once again, "the purpose of the letter was to *confirm* the joint representation of [both parties by K&L], to define the scope of said representation, and to secure consent" from the parties for the continued joint representation. (*Id.*) (emphasis added). It

is important to note that the scope of the representation described in the second letter remained identical to the scope of the representation described in the first conflict waiver letter – i.e., that K&L would jointly represent Hall and Ladera in the Consolidated Adversary Cases without limitation. (*Id.,* pp. 2-3.) Both Hall and Ladera signed the letter and consented to the continued joint representation.[4]

In November 2017, a mediation was held in the bankruptcy proceedings and a settlement was reached. (ECF No. 23, ¶¶ 22-23). However, according to Hall's Third Amended Complaint, the settlement included all parties involved in the bankruptcy proceedings except Ladera. (*Id.*, ¶ 22). At oral argument, Hall's counsel confirmed K&L continued to jointly represent both Hall and Ladera throughout the pendency of the bankruptcy proceedings, including the settlement negotiations.

### D. Current Litigation and Subpoena to K&L

Hall filed the current lawsuit against Ladera in March, 2018. (*See* ECF No. 23, Third Amended Complaint). Hall alleges claims against Ladera for breach of the Intercreditor Agreement related to Ladera's alleged objections to the bankruptcy settlement agreement. (*Id.*) Ladera answered Hall's complaint and asserted counterclaims against Hall for fraudulent misrepresentation, negligent misrepresentation, and declaratory relief. (ECF No. 26).

Ladera's counterclaims assert that Hall misrepresented material facts to induce Ladera to provide it's $6,000,000 loan to Cal-Neva and enter into in the Intercreditor Agreement. (*Id.,* pp.8-23). According to Ladera, Hall expressly represented to Ladera that its loan would be subordinate only to Hall's loan. (*See id.*, pp. 12-16 ¶¶ 25-49). However, Ladera alleges Hall knew Penta had already began work on the project and had a perfected lien on the property making Ladera's loan subordinate to both Penta and Hall. (*Id.*)

---

[4] During oral argument, Hall's counsel confirmed that K&L's representation and relationship with Hall was related only to the Penta Lien Litigation and the Consolidated Adversary Case. At not time did K&L represent Hall for any other purpose or in any other matter than those described in the conflict waiver letters.

5

On August 16, 2018, Ladera served a subpoena duces tecum on K&L seeking various documents related to its representation of Hall and Ladera in the Penta Lien cases and the various bankruptcy proceedings. The subpoena seeks three broad categories of documents. First, in Paragraphs 1 and 2 of the subpoena ("the State Court Paragraphs"), Ladera requested K&L provide the "entire files" it maintained in relation the Penta Lien cases in the Nevada state court action (Case No. CV16-00837) and the Placer County, California state court action. (ECF No. 40-2, pp. 13-14, ¶¶ 1 & 2).

Next, in Paragraphs 3, 5, 6 and 7[5] ("the Bankruptcy Paragraphs"), Ladera subpoenaed the "entire files" maintained by K&L in relation to the Hall Nevada Adversary case, the Hall California Adversary case, the Ladera Adversary case, the Consolidated Adversary Cases, the lead Cal-Neva bankruptcy case, and the Cal-Neva bankruptcy cases filed in California and Nevada prior to consolidation. (*Id.*, pp. 13-16, ¶¶ 3, 5-7).[6] Ladera also subpoenaed any and all documents related to "all negotiations leading up to and including" the settlement reached by Hall, Penta, Cal-Nevada and other entities in the bankruptcy proceedings. (*Id.*, ¶ 7).

Finally, in Paragraphs 8, 9, and 10 ("the Catchall Paragraphs"), Ladera seeks any other documents or communications, which were not covered by or included in the above paragraphs. Specifically, Ladera subpoenaed: (1) any communications between K&L, Hall, and/or Ladera related to the Penta Lien cases; (2) any communications between K&L, Hall, and/or Ladera regarding any actual or potential conflicts of interest in K&L's representation of Hall and/or Ladera; and, (3) any documents or communications related to how "Ladera's interests were represented or protected during negotiations leading up to and including the Compromise and Settlement Agreement" in the Cal-Neva proceedings. (*Id.*, p. 8, ¶¶ 8-10).

---

[5] The subpoena appears to contain a typographical error in that it skips from Paragraph 3 to Paragraph 5.

[6] The documents request related to the following bankruptcy case numbers: BK-N-16-51282-GWZ; BK-N-16-05036-GWZ; BK-N-17-05003-GWZ; BK-N-17-5007-GWZ; and, Eastern District of California Bankruptcy Case No. 16-2226.

6

E.  Current Motion

After receiving the subpoena, K&L sent a letter to Ladera objecting to the scope of the requests. (ECF No. 40-4). In addition, on August 28, 2018, Hall filed the current motion to modify the subpoena served on K&L. (ECF No. 40). Hall argues the subpoena must be modified to significantly narrow the items K&L would be required to produce. According to Hall, these modifications are necessary because most of the documents sought are protected by the attorney-client privilege, the common interest privilege and/or the work product doctrine. (*Id.*, pp. 4-7). Hall's motion did not identify any specific documents or communications that it claimed were specifically protected.

In response, Ladera argues that the court should deny Hall's motion in its entirety because Hall's assertions of privilege fail. (*See* ECF No. 43). According to Ladera, K&L jointly represented both Hall and Ladera in the cases identified in the subpoena and thus Hall cannot claim any of the documents or communications are protected from disclosure to Ladera. (*Id.*)

In reply, Hall contested Ladera's application of the joint representation exception claiming that it did not apply to communications outside the scope of the joint representation. According to Hall, this included communications between Hall and K&L prior to the joint representation of Hall and Ladera as well as communications between K&L and Hall's other attorneys (in house counsel Stephanie Byrd, Nathan Aman, and Frank Wright) in which Ladera was not a party. Hall argued the joint representation exception does not apply these communications and documents because: (1) the joint representation exception does not apply to communications between K&L and Hall's other attorneys that did not include Ladera or its representatives; (2) the scope of the representation of K&L in relation to Hall and Ladera was altered by the second conflict letter sent on August 15, 2017; and, (3) the joint representation exception should not apply to these communications because Hall was forced to accept the representation by K&L as it was selected by Old Republic.

7

At oral argument, the court initially indicated that it could not make a ruling on the motion due to lack of information regarding the specific documents that Hall claimed were privileged as well as the additional information and arguments provided at the hearing. At that time, the court tentatively indicated that it would require Hall to provide the court with the documents and items it claimed were privileged in order to allow the court to review those items in camera prior to making a ruling.

Following oral argument, however, the court re-reviewed the filings in the case and conducted extensive additional legal research. Based on this additional review and research, the court finds that Hall's arguments lack merit and the motion should be denied in its entirety.

## II. DISCUSSION

### A. Standard for Modification of Subpoena

Federal Rules of Civil Procedure allow parties wide latitude in seeking discovery of "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). There are limits, however, on what a party may obtain through discovery. For example, a court may quash or modify a subpoena where compliance with the subpoena would require "disclosure of privileged or other protected matter" or "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii), (iv).

In this case, the contested subpoena was served on K&L, a non-party to this litigation. Although K&L initially objected to the subpoena through a letter sent to Ladera, K&L did not file the instant motion. Rather, Hall, the plaintiff in this action, filed the current motion seeking to "modify" the subpoena issued to K&L pursuant to Federal Rule of Civil Procedure 45(d)(3)(A)(iii).

Ordinarily, a party lacks standing to move to quash a subpoena that is served on a third party. *Crispin v. Christian Audigier, Inc.*, 717 F. Supp. 2d 965, 973–74 (C.D. Cal. 2010). However, courts have determined that a party does have standing to challenge a subpoena served on a third party if the party can establish that it has a personal right or privilege regarding the subject matter of the subpoena. *Kellgren v. Petco Animal*

*Supplies, Inc.*, Case No. 13-CV-0644, 2015 WL 11237636, * 3 (S.D. CA April 10, 2015). Here, Hall claims K&L's compliance with the subpoena would require the disclosure of privileged or protected material and "no exception or waiver applies." (ECF No. 40, p. 3). As such, Hall has standing to seek to quash or modify the subpoena under these circumstances.

B.  <u>Attorney-Client Privilege, Common Interest Privilege and Work Product Doctrine</u>

Hall's motion argues that the subpoena must be modified in various respects because it requires K&L to disclose documents and/or communications that are subject to the attorney-client privilege, the common interest privilege and/or the work product doctrine. As this case is based upon diversity jurisdiction, Nevada law governs Hall's privilege claims. *Kandel v. Brother Intern. Corp.*, 683 F.Supp.2d 1076, 1081 (C.D. Cal. 2010); *see also* Fed. R. Evid. 501.

Generally speaking, the attorney-client privilege protects confidential disclosures made by a client to an attorney to obtain legal advice and an attorney's advice in response to such disclosures. *United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir.1996) (quotation omitted), cert. denied, 520 U.S. 1167 (1997). Under Nevada law, a client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications: (1) between himself or his representative and his lawyer or his lawyer's representative; (2) between his lawyer and the lawyer's representative; or, (3) made for the purpose of facilitating the rendition of professional legal services to the client, by him or his lawyer to a lawyer representing another in a matter of common interest. *See* NRS 49.095.

The attorney-client privilege is a rule of evidence; it has not been held a constitutional right. *Clutchette v. Rushen*, 770 F.2d 1469, 1471 (9th Cir.1985). "Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." *Weil v. Investment/Indicators, Research and Management, Inc.*, 647 F.2d 18, 24 (9th Cir.1980). The party asserting the attorney-client privilege has the burden of

proving that it applies. *Id.* at 25. Moreover, a party claiming the privilege "must identify specific communications and the grounds supporting the privilege as to each piece of evidence over which privilege is asserted." *United States v. Martin*, 278 F.3d 988, 1000 (9th Cir. 2002). Blanket assertions of attorney-client privilege are "extremely disfavored." *Id.* For the privilege to apply, "the communication must be between the client and lawyer for the purpose of obtaining legal advice." *Id.* The mere "fact that a person is a lawyer does not make all communications with that person privileged." *Id.* at 999. The party asserting the privilege must, at a minimum, make a *prima facie* showing that the privilege protects the information the party intends to withhold. *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir.1992).

The "common interest privilege" (also known as the "joint defense doctrine") is an extension of the attorney-client privilege. *FSP Stallion 1, LLC v. Luce*, No. 2:08-CV-01155-PMP, 2010 WL 3895914, at *16 (D. Nev. Sept. 30, 2010). Ordinarily, attorney-client communications made in the presence of a third party would not be protected from disclosure. *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 578 (N.D. Cal. 2007). However, pursuant to the common interest privilege, attorneys for different clients pursuing a common legal strategy may communicate with one another without the protections of the attorney-client privilege being lost. *RKF Retail Holdings, LLC v. Tropicana Las Vegas, Inc.*, No. 2:14-cv-01232-APG-GWF, 2017 WL 2292818, at *2 (D. Nev. May 25, 2017). In order for this apply, however, three elements must be met: (1) the communication is made by separate parties in the course of a matter of common [legal] interest; (2) the communication is designed to further that effort; and (3) the privilege has not been waived. *Id.* (internal citations and quotations omitted). However, this privilege only applies, if the communications at issue are privileged in the first instance. *Id.*

By contrast, "the application of the work product doctrine in diversity cases is determined under federal law." *Kandel*, 683 F.Supp.2d at 1083 (citing *Frontier Refining, Inc. v. Gorman–Rupp, Inc.*, 136 F.3d 695, 702 n. 10 (10th Cir. 1998). The work product

doctrine protects from discovery "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. Pro. 26(b)(3)(A). One of the primary purposes of the work product doctrine is to prevent one party from exploiting another party's efforts to prepare for litigation. *Kandel*, 683 F.Supp.2d at 1083 (citing *Holmgren v. State Farm Mut. Auto Ins. Co.*, 976 F.2d 573, 576 (9th Cir. 1992); *see also RKF Retail Holdings,* 2017 WL 2292818, at *5 (describing work product doctrine). The work product doctrine creates a qualified immunity, rather than a privilege, and the qualification of the immunity is to be determined upon a showing of necessity or good cause. *Kandel*, 683 F.Supp.2d at 1083. Like the attorney-client privilege, the party claiming work product immunity has the burden of proving the applicability of the doctrine. *Id.* at 1083–84 (citing A*. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 192 (C.D. Cal. 2006)).

### C. Joint Representation Exception[7]

However, not all communications between an attorney and client are privileged or subject to the work product doctrine. Information such as the identity of the client, the amount of the fee, the identification of payment by case file name, the general purpose of the work performed, and whether an attorney coached a client in his testimony is not privileged*. See, e.g., United States v. Carrillo*, 16 F.3d 1046, 1050 (9th Cir.1994); *Clarke v. American Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir.1992).

Nevada has adopted various exceptions to the attorney-client privilege, including the joint representation exception codified at NRS 49.115(5). Pursuant to this exception, "a communication relevant to a matter of common interest between two or more clients if the communication was made by any of them to a lawyer retained or consulted in common, when offered in an action between any of the clients" is not subject to the

---

[7] This doctrine is known by a variety of interchangeable names. These include, but are not limited to: the "joint-client privilege," "joint client doctrine," "common interest exception" and so on. For clarity, the court will refer to this doctrine as the "joint representation exception" throughout this order.

11

attorney-client privilege. NRS 49.115(5). Under Nevada law, "when a lawyer acts as the common attorney of two parties, their communications to him are privileged as far as they concern strangers, but as to themselves they stand on the same footing as to the lawyer, and either can compel him to testify against the other as to their negotiations." *Livingston v. Wagner*, 23 Nev. 53, 42 P. 290, 292 (1895) (citing *In re Bauer's Estate*, 79 Cal. 304, 21 P. 759 (1889)).

Thus, "when former co-clients *sue one another*, the *default rule* is that all communications made in the course of the joint representation are discoverable.... This rule has two bases: (1) the presumed intent of the parties, and (2) the lawyer's fiduciary obligation of candor to both parties." *In re Hotels Nevada, LLC*, 458 B.R. 560, 571-572 (Bankr. D. Nev. 2011) (quoting *Teleglobe USA Inc. v. BCE, Inc.*, 493 F.3d 345, 366 (3d Cir. 2007) (emphasis added). Courts have determined this exception extends to legal files created by an attorney who represents co-clients, including any work product documents contained therein. "The entire contents of those legal files belong jointly to the clients in question, with each having an undivided ownership interest in, and equal right of access to, all of those files." *Scroggins v. Powell, Goldstein, Frazer & Murphy (In re Kaleidoscope, Inc.)*, 15 B.R. 232, 244 (Bankr.N.D.Ga.1981), rev'd on other grounds, 25 B.R. 729 (N.D. Ga. 1982); *see also Matter of Michigan Boiler & Eng'g Co.*, 87 B.R. 465, 469 (Bankr. E.D. Mich. 1988) (rejecting work product assertions by law firm to prevent trustee gaining access to legal files for jointly represented client). As such, the attorney-client privilege and work product doctrines do not apply in disputes between co-clients who are jointly represented by the same attorney in a particular dispute.

D. Application To Current Motion

With these principles in mind, the court will address each category of documents sought by the subpoena.

*1. State Court Paragraphs - 1 & 2*

First, in the State Court Paragraphs 1 & 2, Ladera seeks the disclosure of the "entire case files" K&L maintained during its representation of Hall in the Penta Lien

12

cases. (ECF No. 40-2, pp. 4-5, ¶¶ 1& 2). Hall has asserted these paragraphs must be modified to exclude from disclosure any documents that are protected by the attorney-client privilege, common interest privilege, and/or work product doctrine. (ECF No. 40, p. 5, ¶¶ 15).

As a starting point, Hall has the burden of proving that any of these privileges apply in this case. *Weil*, 647 F.2d at 25. To meet this burden, Hall was required to specifically identify the any communications or documents that it believed are privileged. *Martin*, 278 F.3d at 1000. Hall has not identified any specific documents or items that may be subject to the privilege. Rather, Hall has made a blanket assertion of these privileges. Although this would ordinarily be insufficient to support the assertion of the privilege, the court agrees with Hall that it is highly likely that there are communications and documents within the K&L files related to the Penta Lien cases that may be protected by the privileges identified in the motion.

Moreover, the court also agrees with Hall that the joint representation exception would not apply to these documents. It is undisputed that K&L did not jointly represent Ladera in the Penta Lien cases pending in Nevada and California state courts. As such, K&L's representation of Hall in the Penta Lien cases is outside the scope of the joint representation K&L later provided to Hall and Ladera.

In spite of the above, however, Hall has failed to meet its burden to establish that State Court Paragraphs should be modified. First, contrary to the assertions of Hall, even if there is protected material related to these files, those materials are protected from disclosure by the express provisions of the subpoena. Specifically, under the heading, "Instructions for Items to be Produced" located at Paragraph 2, page 3 of the subpoena, K&L is permitted to withhold documents it believes are protected by the attorney-client privilege or are protected by providing Ladera a privilege log detailing the documents withheld and the basis for the withholding. Therefore, to the extent K&L believes that any documents responsive to the State Court Paragraphs are subject to any privilege, K&L

should provide Ladera a privilege log, consistent with the directions provided in the subpoena.

In addition, the court disagrees that the requests in the State Court paragraphs are overbroad or would place an undue burden on K&L. The documents requested in the State Court paragraphs are very limited. The Penta Lien cases were filed in state court in April 2016. However, Hall did not tender a request to Old Republic for the appointment of coverage counsel until August 2016. Thus, K&L's exclusive representation of Hall did not begin until sometime thereafter. However, by October of 2016, the Penta Lien cases were transferred to the bankruptcy court and by no later than March 8, 2017, K&L jointly represented Hall and Ladera. Thus, K&L's exclusive representation of Hall in the Penta Lien cases lasted, at most, five months prior to the joint representation commencing.

As the State Court paragraphs seek documents that span only a few months and there is a specific protocol for protecting any privileged materials contained within the subpoena, the court finds that there is no basis to modify the State Court Paragraphs.

*2. The Bankruptcy Paragraphs - 3, 5, 6 & 7*

Next, in Bankruptcy Paragraphs 3, 5, 6, and 7, the subpoena seeks the "entire case" files maintained by K&L in relation to its representation of Hall and Ladera in the various bankruptcy proceedings, including the adversary proceedings and the lead bankruptcy cases. (ECF No. 40-2, pp. 5-7). Here again, Hall argues these paragraphs should be modified to preclude the disclosure of documents it asserts are subject to the attorney-client privilege, common interest privilege, and/or work product doctrine related to communications between Hall's other attorneys and K&L in which Ladera was not a party. However, Hall has failed to establish that these paragraphs should be modified.

In this instance, the record establishes that by no later than March 8, 2017, K&L jointly represented both Hall and Ladera in each of the cases identified in the Bankruptcy paragraphs. In fact, each of the case numbers were explicitly referenced in the conflict waiver letters sent by K&L on March 8, 2017 and August 15, 2017 to Hall and Ladera. (ECF Nos. 43-1; 43-2). In these letters, K&L expressly sought an affirmative waiver of

any conflicts by both Hall and Ladera in order to permit K&L to jointly represent the parties in those cases – without limitation. (*Id.*) Therefore, all of the documents requested by the Bankruptcy paragraphs fall within the scope of the joint representation starting no later than March 8, 2017 and continuing until the cases were resolved. Although Hall may be able to assert a privilege in these documents as to a third party, these privileges do not apply in relation to Ladera. *Livingston,* 42 P. at 292; NRS 49.115(5). In addition, Ladera is entitled to complete copies of the case files K&L maintained in relation to this joint representation. *In re Kaleidoscope, Inc.*, 15 B.R. at 244; *Matter of Michigan Boiler & Eng'g Co.*, 87 B.R. at 469; NRS 7.055 (requiring attorney to deliver to client its entire file upon demand and payment of outstanding fees).[8]

The Court rejects Hall's arguments seeking to limit the applicability of the joint representation exception to the documents requested in the Bankruptcy Paragraphs after the joint representation commenced. First, Hall's argument that the joint representation exception does not apply to communications made between K&L and Hall's other attorneys that were made outside the presence of Ladera or its representatives is not supported. Hall has not provided, nor has the court been able to locate, any case that holds that the attorney-client or work product doctrine bars disclosure to a co-client of communications made to the common attorney unless the other co-client is present at the time of the communication. To the contrary, a review of the applicable law in Nevada and other jurisdictions reaches the opposite conclusion.

---

[8] It is unclear exactly when K&L began its joint representation of Hall and Ladera. To the extent K&L only represented Hall in the bankruptcy proceedings following the transfer of the Penta Lien cases from state court in the Fall of 2016 until March 8, 2017, any privileged communications or protected documents would fall outside the scope of the joint representation exception. Thus, there may be some documents or communications that would be protected from disclosure. This alone, however, does not require a modification of the Bankruptcy Paragraphs. Rather, as explained in connection with the State Court paragraphs above, the subpoena provides specific direction and instructions for how K&L should address privileged documents for that short time period.

NRS 49.115(5) specifically states that the attorney-client privilege does not apply to "a communication relevant to a matter of common interest between two or more clients if the communication *was made by any of them* to a lawyer retained or consulted in common, when offered in an action between any of the clients." Thus, the statute itself makes clear that any communication made to a joint attorney by any co-client is not subject to claims of privilege when offered in an action between any of the clients. There is no limitation in the statute to communications made outside the presence of any other co-clients.

Moreover, a review of the case law from various jurisdictions also supports this conclusion. In those cases, it is widely recognized that the joint representation exception applies to *all* communications made by a co-client to the joint attorney – regardless of whether both parties are present when the communications occur. *See e.g., Ashcraft & Gerel v. Shaw*, 728 A.2d 798, 813 (Md.App. 1999) (rejecting claim that joint representation exception only applies to communications made to joint attorney when both clients are present); *Gottwald v. Medinger*, 257 A.D. 107 (4th Dep't, New York 1939) (no privilege to communications made by borrower to an attorney that represented both a borrower and lender in arranging loan); *Henke v. Iowa Home Mut. Cas. Co.*, 87 N.W.2d 920, 923-925 (Iowa 1958) (holding that attorney-client privilege did not apply to any communications between co-clients and a joint attorney for parties regardless of whether both parties were present during the communication).

The court also rejects Hall's argument that the documents and communications between Hall's other attorneys and K&L after August 15, 2017 are outside the "scope" of the joint representation because the second conflict waiver letter altered the scope of the joint representation. (ECF No. 43-2). Nothing in the letter states, or even insinuates, the scope of K&L's joint representation was altered or changed by the letter or the filing of the lawsuit by Hall against Ladera. In fact, a review of the letter confirms K&L was advising Hall and Ladera that the scope of the joint representation would remain

*unchanged* – in spite this new development – provided the parties agreed to waive any possible conflicts of interest. (*Id.*)

The court further rejects Hall's argument, asserted for the first time at oral argument, that the joint representation exception should not apply to the communications between K&L and Hall's other attorneys because Hall did not select K&L to represent it. According to Hall, because it had "no choice" but to accept K&L as its insurance coverage counsel, this somehow limits the application of the joint representation exception in this case.

Hall provided no case law to support this argument. Following the argument, however, the court located cases that reject the assertion that the joint representation does not apply, or applies differently, when the attorney who represents the joint parties is selected by an insurance company. *See e.g., Globe One Specialty Mut. Ins. Co. v. Congregation Bais Yisroel,* 381 F.Supp.2d 267. 280 (S.D.N.Y. 2005) (noting that communications between an insured and counsel supplied by the insurer are not privileged in an action between insured and insurer); *Waste Management, Inc. v. Int'l Surplus Lanes Ins. Co.,* 579 N.E.2d 322, 329 (Ill. 1991) (finding joint representation exception applied to where the attorney was not hired by, and did not have direct communication with, the insurer where the attorney acted for the mutual benefit of both the insured and the insurer); *Henke*, 87 N.W.2d at 923 (rejecting argument that selection of attorney by the insurance company alters or modifies the relationship between the attorney and client when jointly representing the insurer and the insured; holding no privilege in communications between the insurer and coverage counsel that did not include insured); *Vicor Corp. v. Vigilant Ins. Co.*, 674 F.3d 1, (1st Cir. 2012) (no privilege in controversy between insured and the insurer in joint representation by coverage counsel).

Therefore, the court rejects Hall's arguments that the communications between K&L and Hall's outside counsel are protected from disclosure to Ladera. Rather, after an extensive review, the court finds that the joint representation exception applies to *all*

17

documents and communications throughout the entirety of K&L's joint representation of Hall and Ladera without exception once the joint representation commenced. As such, there is no basis to alter or modify the subpoena in relation to the Bankruptcy Paragraphs 3, 5, 6 and 7.[9]

### 3. Catchall Paragraphs – 8, 9 & 10

Finally, in the Catchall Paragraphs 8, 9, and 10 overlap with of the various paragraphs addressed above and are intended to capture any additional documents that would not otherwise be included in the preceding paragraphs. (ECF No. 40, p. 7, ¶ 20). For the same reasons explained above, Hall has failed to establish that these paragraphs should be modified.

First, Paragraph 8 is intended to capture any additional documents or communications related to K&L's representation of Hall in the Penta Lien cases that are not otherwise found within the case files. The issues related to these documents and communications are the same as those related to the State Court Paragraphs. For the same reasons stated in Section II(D)(1), the court finds modification of this paragraph is not appropriate.

Next, Paragraphs 9 and 10 are intended to capture any additional documents or communications between K&L, Hall, and/or Ladera related to K&L's joint representation of Hall and Ladera, any discussions of the various conflicts, and K&L's actions taken during the settlement negotiations related to Ladera's interests. These issues overlap and present the same issues as the issues related to the Bankruptcy Paragraphs. Therefore, for the same reasons stated in Section II(D)(2), the court finds that modification of these paragraphs is not warranted.

---

[9] Hall argued that the documents and communications related to the settlement of reached in the bankruptcy proceeding was prohibited from discovery pursuant to Federal Rule of Evidence 408. However, at oral argument, Hall acknowledged that K&L jointly represented by Hall and Ladera throughout the pendency of the bankruptcy proceedings, including the settlement negotiations. Therefore, the joint representation exception applies to the documents and communications related to the settlement negotiations as well.

### III. CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff's motion to modify the subpoena (ECF No. 40) is **DENIED** in its entirety.

**IT IS FURTHER ORDERED** that K&L shall have thirty (30) days from the entry of this order to comply with the subpoena issued by Ladera on August 16, 2018.

**DATED**: November 30, 2018.

_____
**UNITED STATES MAGISTRATE JUDGE**