# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

HALL CA-NV, LLC, a Texas limited
liability company,

        Plaintiff

v.

LADERA DEVELOPMENT, LLC,
a Nevada limited liability company,

        Defendant

LADERA DEVELOPMENT, LLC,
a Nevada limited liability company,

        Counterclaimant,

v.

HALL CA-NV, LLC, a Texas limited
liability company,

        Counter-defendant

Case No.: 3:18-cv-00124-RCJ-WGC

**Order**

Re: ECF Nos. 40, 90, 91, 92

       The court issues this order regarding: (1) plaintiff/counter-defendant Hall CA-NV, LLC's

(Hall) motion to modify subpoena duces tecum on Kolesar & Leatham (K&L) (ECF No. 40); and,

(2) K&L's response to that briefing and motion for sanctions under Federal Rule of Civil Procedure

(FRCP) 45(d)(1), motion to quash subpoena under FRCP 45(d)(3)(A)(iii), (iv)[1], or alternatively,

---

[1] The title of the motion only references FRCP 45(d)(3)(A)(iii), but the points and authorities
also ask the court to quash the subpoena under FRCP 45(d)(3)(A)(iv).

motion for reasonable compensation under FRCP 45(d)(3)(C)(ii) (ECF Nos. 90, 91, 92, 93 (in camera submission)).[2]

Having considered the extensive briefing on these motions, the court: finds based on the totality of circumstances there was no joint client relationship between Hall and defendant/counterclaimant Ladera Development, LLC (Ladera) concerning representation by K&L; and, as a result the subpoena should be modified to exclude the request for materials in the Hall file subject to the attorney client privilege and work product protection; as to those materials that may be responsive to the subpoena that are not privileged or protected, the court grants K&L's motion to quash the subpoena as compliance by K&L would be unduly burdensome under the circumstances because Ladera may request non-privileged and non-protected materials directly from Hall under Rule 34[3]; denies Hall's motion to modify the subpoena as moot; and, denies K&L's motion for sanctions or reasonable compensation under FRCP 45.

## I. PROCEDURAL INTRODUCTION

This dispute arises from a subpoena served by defendant/counterclaimant Ladera under FRCP 45 on non-party K&L in this action. K&L represented both Hall and Ladera in adversary proceedings in a bankruptcy case preceding this litigation. Generally speaking, Ladera's subpoena asked K&L to produce its entire file for Hall from the prior proceedings, including any communications with Hall and/or Ladera, under the theory that K&L jointly represented Hall and Ladera such that there is no attorney-client privilege or work product doctrine protection as

---

[2] In accordance with LR IC 2-2(b), K&L docketed their filing as three separate filings given the different relief sought. ECF No. 90 is K&L's response to the briefing on Hall's remanded motion to modify the subpoena; ECF No. 91 is K&L's motion for sanctions under FRCP 45(d)(1); and ECF No. 91 is K&L's motion to quash the subpoena, or alternatively for reasonable compensation under FRCP 45(d)(3)(C)(ii).

[3] This will require Hall to create a privilege log, and then produce responsive materials that may not be otherwise subject to an applicable objection.

between Hall and Ladera with respect to those actions now that Hall and Ladera have become adverse to one another in this action. Hall and K&L disagree, and maintain that K&L's representation of Hall and Ladera in the adversary proceedings was separate, and the materials requested are protected by the attorney-client privilege and work product doctrine. K&L further contends that it already provided the entire Hall case file from those proceedings to Hall; therefore, even if its position regarding its representation of the parties does not prevail, it should not be subject to the undue burden and expense of having to respond to the subpoena as Ladera can request the materials directly from Hall.

This case was initially assigned to District Judge Robert C. Jones and Magistrate Judge Carla Baldwin Carry. Hall originally filed its motion to modify the subpoena on August 28, 2018. (ECF Nos. 40, 40-1 to 40-4.) Ladera filed a response. (ECF Nos. 43, 43-1 to 43-3.) Hall filed a reply. (ECF No. 44.) Ladera was granted leave, to file a sur-reply. (ECF No. 50.) Judge Carry held a hearing on Hall's motion on November 9, 2018. (ECF No. 53.) On November 30, 2018, Judge Carry issued an order denying the motion to modify and required K&L to comply with the subpoena. (ECF No. 56.) Hall filed an objection. (ECF Nos. 58, 58-1 to 58-4.) Ladera filed a response. (ECF No. 69.) District Judge Jones held a hearing on the objection on February 19, 2019, and sustained Hall's objection. Judge Jones reversed and vacated Judge Carry's order, and remanded the matter for consideration of all objections to the subpoena, including K&L's, and allowed K&L to submit evidence regarding K&L's prior legal representation of Hall and Ladera. (ECF Nos. 72, 75, 80.)

Judge Carry recused from the case on April 5, 2019, and it was reassigned to the undersigned as magistrate judge. (ECF No. 89.) A status conference was held on May 10, 2019. The parties and K&L agreed that under FRCP 45, once a party objects to a subpoena that party

does n.ot have an obligation to respond, and any time after there is an objection to the subpoena, the serving party may move the court for compliance or an order compelling production of the subpoenaed documents. FRCP 45 also allowed Hall to file a motion to modify the subpoena since it argued that it required disclosure of privileged material. Ladera had not filed a motion to compel because it believed that Hall's motion encompassed the relevant issues. In any event, K&L maintained that the documents responsive to the subpoena were subject to the attorney-client privilege and there was no joint representation privilege as between Hall and Ladera. K&L represented that it had a "1-inch stack" of documents evidencing that a joint privilege did not exist.

The parties agreed, consistent with Judge Jones' ruling vacating and remanding Judge Carry's order, that K&L should have an opportunity to be heard regarding the privilege issue. The court ordered the parties and K&L to meet and confer on the representation and privilege issues, and if unsuccessful, directed K&L to file briefing on the topic, followed by responsive and reply briefs. (ECF No. 89.) The parties were unsuccessful at resolving their dispute, and the present briefing ensued.

The court will provide an in depth factual and procedural background which is an essential precursor to the subsequent analysis of the representation and privilege issues.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The court has carefully combed the entire record in this case to amalgamate this comprehensive summary of events leading up to the issuance of this Order.

**A. The Cal-Neva Redevelopment**

As Judge Carry aptly described it, this action is one of many lawsuits involving Hall and Ladera related to the failed re-development of the Cal-Neva property, which straddles the border of California and Nevada on the shores of Lake Tahoe. New Cal-Neva Lodge, LLC (Cal-Neva)

undertook to re-develop the property. The general contractor for the project was Penta Building Group, LLC (Penta).

On September 30, 2014, Hall agreed to loan Cal-Neva $29,000,000, and Ladera agreed to loan Cal-Neva $6,000,000. Both Hall and Ladera obtained title insurance policies from Old Republic National Title Insurance (Old Republic) to insure their respective loan priorities. Also on September 30, 2014, Hall and Ladera entered into what has been referred to in this litigation as the Intercreditor Agreement. The agreement deemed Hall's loan the senior loan on the project and Ladera's the junior loan, and defined obligations, roles and rights of the parties and imposed a variety of obligations and restrictions on Ladera. Hall was to be given first priority, while Ladera would be second only to Hall. The deeds of trust were respectively recorded in Washoe County, Nevada, and Placer County, California, on October 2, 2014.

**B. Penta Lien Cases and Cal-Neva's Bankruptcy Proceedings**

Issues arose during construction that led to Hall filing a notice of default and election to sell. On April 14, 2016, Penta filed a mechanic's lien foreclosure complaint in the Second Judicial District Court in Washoe County, Nevada, asserting claims against Cal-Neva, Hall and others, asserting that Penta's mechanic's lien had priority over Hall's deed of trust. (*See* ECF No. 90-6 at 3.) Penta filed a similar action in Placer County on May 19, 2016. (ECF No. 90-6 at 4.) Ladera was not a party to either of those cases.

On July 28, 2016, Cal-Neva filed for Chapter 11 bankruptcy protection. (*See* ECF No. 98 at 3.)

On October 25, 2016, the Penta lien priority cases pending against Hall in Nevada and California were removed to the United States Bankruptcy Courts for the Districts of Nevada and the Eastern District of California, referred to respectively as the Hall NV Adversary and Hall CA Adversary, and collectively as the Hall Adversary proceedings.

**C. K&L's Retention by Old Republic for the Adversary Proceedings**

On January 23, 2017, K&L was retained by Old Republic to represent Hall in the Hall NV Adversary, and was later retained by Old Republic to represent Hall in the Hall CA Adversary. (Maurice Decl., ECF No. 90-4 ¶ 3; Wood Decl., ECF No. 90-5 ¶ 3; Stephanie Byrd Decl., ECF No. 97-2 ¶ 2.)

On January 30, 2017, Cal-Neva's bankruptcy proceeding in the Eastern District of California was transferred to the District of Nevada under bankruptcy case: BK-N-16-51282-GWZ . The Hall CA Adversary was also transferred, and the Hall Adversary proceedings were assigned the following case numbers: BK-N-05036-GWZ (Hall NV Adversary) and BK-N-17-05003-GWZ (Hall CA Adversary). (See IECF No. 90-6 at 3-4.) Ladera was not a party to those adversary proceedings.

On February 15, 2017, Penta filed a complaint commencing an adversary action against Ladera, asserting a claim of priority of Penta's mechanic's lien over Ladera's deed of trust. (ECF No. 90-6 at 5.) It was assigned adversary case number BK-N-17-05007-GWZ (Ladera Adversary). (*Id.*) Hall was not a party to the Ladera Adversary.

On March 8, 2017, K&L was retained by Old Republic to represent Ladera in the Ladera Adversary. (Maurice Decl., ECF No. 90-4 ¶ 4; Wood Decl., ECF No. 90-5 ¶ 4; ECF No. 98 at 4.)

**D. K&L's First Conflict Waiver Letter**

Also on March 8, 2017, K&L sent a letter to Ladera with the subject line: "Waiver of Conflict of Interest." The letter states that it "shall confirm and memorialize the waivers of the actual and potential conflicts of interest described [therein] and consent to [K&L's] representation described [therein]." It goes on to state that K&L was retained by Old Republic to represent Hall in connection with the Hall mechanic's lien litigation (the Hall Adversary proceedings), and was

also asked to represent Ladera in connection with the Ladera Adversary. It then says: "The purpose of this letter is to describe the proposed joint representation of [Hall] and [Ladera], to define the scope of said representation, and to secure the consent of those concerned to the representation as described herein."

The letter goes on to cite Nevada Rules of Professional Conduct Rule 1.7 governing concurrent conflicts of interest. It then states that the Hall Adversary proceedings and the Ladera Adversary involved the same property and the same priority dispute, and at the court's request and instruction, K&L proposed to stipulate to consolidation of the Hall Adversary proceedings and the Ladera Adversary. K&L indicated that it could represent both Hall and Ladera without adversely affecting its relationship with either Hall or Ladera. This is because both Hall and Ladera would be taking the same position with respect to the claims asserted by the lien claimants, i.e., the scope and duration of the work of improvement, date on which the work of improvement commenced such that actual on-site construction was visible, and the intent to prohibit commencement of the work of improvement prior to the date on which Hall and Ladera recorded their deeds of trust to ensure they would have priority over the mechanic's liens. The letter then asked both Hall and Ladera to sign the letter to consent to K&L's "representation of Ladera Development, LLC and Hall CA-NV, LLC as outlined above." (ECF No. 43-1.)

**E. Consolidation of the Adversary Proceedings**

On April 11, 2017, the parties stipulated to consolidation of the three adversary proceedings and the bankruptcy court ordered the adversaries consolidated under the Hall NV Adversary case number. (ECF No. 90-6.)

///

///

## F. Hall Sues Ladera in Second Judicial District Court

On August 14, 2017, Hall sued Ladera, in the Second Judicial District Court, Washoe County, Nevada, asserting Ladera had violated the Intercreditor Agreement and sought injunctive relief. (*See* ECF No. 98 at 5.)

## G. K&L's Second Conflict Waiver Letter

Following the filing of that lawsuit, on August 15, 2017, K&L sent a second conflict waiver letter to Hall and Ladera. Again, the subject of the letter was: Waiver of Conflict of Interest. The letter stated that it was to supplement "the March 8, 2017 acknowledgement of joint representation" and to confirm and memorialize waivers of the actual and potential conflicts of interest described and consent to continued representation. It reiterated that K&L had first been retained to represent Hall in the Hall Adversary proceedings, and was then asked to represent Ladera in the Ladera Adversary. It recounted that Hall and Ladera "consented to joint representation by K&L" in the Hall Adversary proceedings and the Ladera Adversary by letter dated March 8, 2017. It then discussed the fact that that Hall had filed a complaint against Ladera in State court on August 14, 2017, asserting claims related to the Intercreditor Agreement between Hall and Ladera.

The letter requested confirmation of "joint representation of [Hall] and [Ladera], to define the scope of said representation, and to secure the consent of those concerned to the continued representation as described herein." Like the March 8, 2017 letter, this letter went on to cite Nevada Rule of Professional Conduct 1.7. It then stated that the Hall Adversary proceedings and the Ladera Adversary involved the same property and same priority dispute with respect to the lien claimants, and that the parties had stipulated to consolidation of those adversaries into the "Consolidated Adversary."

The letter then said that notwithstanding the action Hall filed against Ladera regarding the Intercreditor Agreement in State court, K&L believed it could still represent both Hall and Ladera in the consolidated adversary without adversely affecting K&L's relationship with either Hall or Ladera. This was because Hall and Ladera continued to take the same position regarding the claims and counterclaims asserted in the Consolidated Adversary. K&L asked Hall and Ladera to sign and return the letter as consent to K&L's continued representation of Ladera and Hall, as outlined therein. Hall and Ladera both signed the letter. (ECF No. 40-3; ECF No. 43-2.)

On October 5, 2017, Ladera retained separate coverage counsel to advise it regarding its rights under its policy. Hall also retained separate coverage counsel. (Maurice Decl., ECF No. 90-4 ¶¶ 29-30.)

## H. Hall's Settlement with Penta, Cal-Neva and Others and Dismissal of the Adversary Proceedings

In late 2017, Hall entered into a settlement with Penta, Cal-Neva (the debtor) and others. (ECF No. 90-11 at 13-31.) Ladera was not a party to the settlement. (ECF No. 98 at 6.) On December 15, 2017, Penta and Hall, through separate counsel (not K&L), filed a joint motion to approve compromise and settlement and for dismissal. (ECF No. 90-11.) On December 18, 2019, K&L learned that Ladera intended to file a response to the joint motion, and as a result, Old Republic retained separate counsel for Ladera to file a response. (Maurice Decl., ECF No. 90-4 ¶ 44; Wood Decl., ECF No. 90-5 ¶ 44; ECF No. 98 at 6.)

Ladera filed a limited response to the joint motion on December 19, 2017. (ECF No. 90-10.) It stated that Ladera did not accept the settlement because it was excluded from the negotiations and was not a party to the agreement, but nevertheless did not object to the sale of the property and did not appeal confirmation of the plan. Ladera also stated that it was considering all

of its legal options, including pursuing separate legal action against Hall and/or Penta, and did not waive those rights.

The bankruptcy court construed Ladera's response as an objection, and considering the response, arguments of counsel, and the Intercreditor Agreement between Hall and Ladera, overruled the objection and granted the motion. This resulted in the dismissal of the underlying bankruptcy proceeding and all three adversary proceedings with prejudice. (ECF No. 90-7.) The order specifically stated that it did not prejudice the rights and claims of Ladera against Hall or Old Republic nor the rights and claims of Hall against Ladera or Old Republic. (ECF No. 90-7 at 5.) The order was signed as approved by Frank Wright on behalf of Hall, and was signed as not approved by Jason Rios on behalf of Ladera. (ECF No. 90-7 at 6-7.)

After dismissal of the adversary proceedings, K&L took steps to close its files. (Maurice Decl., ECF No. 90-4 ¶ 47; Wood Decl., ECF No. 90-5 ¶ 47.) It produced a hard drive to Ladera's counsel with Ladera's file in December of 2017, and a hard drive with Hall's file was produced to Hall's counsel in January of 2018. (Maurice Decl., ECF No. 90-4 ¶¶ 47-49; Wood Decl., ECF No. 90-5 ¶¶ 48-49.) By January 18, 2018, K&L's representation of Hall and Ladera had ended. (Maurice Decl., ECF No. 90-4 ¶ 50; Wood Decl., ECF No. 90-5 ¶ 50.)

**I. Hall Files this Action against Ladera and Ladera Counterclaims**

On March 21, 2018, Hall filed this action alleging that Ladera breached the Intercreditor Agreement, among other things, by objecting to the bankruptcy settlement agreement. Ladera has filed counterclaims asserting that Hall fraudulently or negligently misrepresented that Ladera's loan would be junior in priority only to Hall because Hall allegedly knew that Penta had a mechanic's lien right that would be senior in priority to both Hall and Ladera.

///

**J. The K&L Subpoena and Hall's Motion to Modify**

On August 2, 2018, Ladera served a subpoena duces tecum on K&L attorney Brittany Wood, Esq., requesting copies of K&L's entire file for the Penta lien litigation in the Nevada and California courts, the adversary proceedings, and negotiations leading to the settlement between Hall, Penta, Cal Neva and others. The requested documents included communications, including all communications between K&L and Hall and/or Ladera. (ECF No. 98-3.)

Wood served her objections on August 15, 2018, asserting that service was not proper because she was not personally served; she was not the custodian of records for the law firm; the documents sought were protected by the attorney-client privilege and/or attorney work product doctrine, stating that the files of Hall and Ladera were segregated to maintain each party's attorney-client privilege; and, the subpoena was overly broad and unduly burdensome because the parties' complete files were already provided to each party. (ECF No. 40-4; ECF No. 43-3.)

According to Ladera, in order to address and eliminate some of Wood's objections, on August 16, 2018, Ladera served a new subpoena duces tecum on K&L and withdrew the subpoena to Wood. (*See* ECF No. 98-4; ECF No. 40-2.) David McElhinney, Esq., on behalf of Ladera, sent a letter in response to Ms. Wood's objections on August 17, 2018. In addition to withdrawing the subpoena to her and serving a new subpoena to K&L, Mr. McElhinney advised that after he sent the second subpoena out for service he received a motion to modify Hall's subpoena on Brittany Wood, and assumed it would be an identical motion as to the subpoena served on K&L. He proposed that they stipulate to stay the deadline to perform under the subpoena until the matter was fully briefed and resolved by agreement or court decision. (ECF No. 98-4.) Hall filed its

motion to modify the Wood subpoena that day (ECF No. 37), but withdrew it on August 23, 2018, presumably after the subpoena to Wood was withdrawn. (ECF No. 39.)

The subpoena to K&L similarly requested the files maintained in the Penta lien litigation in California and Nevada State courts, in the bankruptcy and adversary proceedings, and specifically sought, among other things, all correspondence, including that between K&L and Hall and/or Ladera. The subpoena (unlike the one served on Wood) asserted that Hall and Ladera were jointly represented by K&L and so there was no attorney-client privilege or work product protection as between them. (ECF No. 40-2.)

On August 21, 2018, K&L attorney Aaron Maurice responded on behalf of K&L to Mr. McElhinney's August 17, 2018 letter to Ms. Wood. He indicated that if Hall intended to file a motion to modify the subpoena served on K&L, that the issues raised by Hall should be resolved before K&L was required to respond, and confirmed that it was reserving its objections to the subpoena. (ECF No. 98-5.)

Hall filed its motion to modify the K&L subpoena on August 28, 2018. (ECF No. 40.)

Two days later, on August 30, 2018, K&L served its objections to the K&L subpoena asserting: (1) the subpoena was unduly burdensome as to K&L because K&L had already provided Hall—a party to this action—with its complete file on a hard drive on January 25, 2018, and so Ladera could request the production of documents from Hall under Rule 34; and (2) many of the documents requested are protected by the attorney-client privilege and work product doctrine because K&L was retained separately by Old Republic to defend Hall and Ladera and separate files and the confidentiality of communications and work product were maintained for each client throughout the representation. (ECF No. 58-2; ECF No. 90-12.)

Hall and Ladera subsequently completed briefing on Hall's motion to modify the K&L subpoena. (ECF Nos. 43, 44, 50.)

**K. Judge Carry's Order and Hall's Objection**

Magistrate Judge Carry held a hearing on the motion on November 9, 2018. (ECF No. 53.) She issued her order denying Hall's motion on November 30, 2018. (ECF No. 56.)

Ladera's briefing did not advise the court of K&L's written objections to the K&L subpoena, or attach the objections to any briefing so as to alert the court as the K&L's position.[4] Ladera appears to argue this was because they had agree to stay the deadline to respond to the subpoena until a decision was reached on the motion. (ECF No. 98 at 11:1-4.) Ladera did not bring up the objection at the hearing before Judge Carry. (ECF No. 76.) Hall's counsel did argue at the hearing that K&L should be able to defend their actions. (ECF No. 76 at 31, lines 22-25 and 32, lines 1-9.)

On December 14, 2018, K&L wrote to Kristen Martini, Esq. (one of the attorneys representing Ladera in this litigation) regarding K&L's receipt of a copy of the order entered by Judge Carry denying Hall's motion to modify the subpoena. K&L stated that: the order ignored FRCP 45 and K&L's due process rights, and was based on misrepresentations of the representation provided by K&L. It asserted that once K&L served its objections to the subpoena, under FRCP 45 Ladera was required to file a motion to compel to require K&L's compliance, which it did not do. K&L claimed that it was required to be provided with notice and an opportunity to be heard before being subject to an order that it comply with a subpoena to which it had objected. Finally, it demanded that Ladera correct the misstatements of fact on which Judge Carry relied in denying

---

[4] Hall's motion attached Ms. Wood's objections to the subpoena directed to her, but not the objections from K&L to the subpoena directed to K&L, which were served two days after the motion was filed.

Hall's motion, and claimed it would be unduly burdensome for it to have to respond to the subpoena when it had already provided Hall and Ladera with their respective files. (ECF No. 58-4.)

Also on December 14, 2018, Hall filed its objection to Magistrate Judge Carry's Order. Hall argued that K&L should be heard since the subpoena was directed to K&L and K&L would be able to provide evidence regarding the nature and scope of its representation of Hall and Ladera. (ECF Nos. 58, 58-1 to 58-4.) Hall's objection contained the first reference to K&L's objections to the subpoena. (ECF No. 58 at 3:19-22.) Hall stated that it did not raise the issue of K&L's objections in its reply brief filed in connection with its motion because it would have been considered raising a new argument. (ECF No. 58 at 6:20-25.)

On December 24, 2018, Mr. McElhinney sent an email to counsel for Hall, Nathan Aman, Esq., proposing a telephonic meet and confer to discuss Judge Carry's order and Hall's objection. He proposed, among other things, to stipulate to have Judge Carry hold the order in abeyance and allow the parties to conduct an evidentiary hearing on the issues raised regarding K&L's representation. (ECF No. 98-6.)

After meeting and conferring, on January 17, 2019, the parties filed a stipulation to schedule a status hearing regarding Hall's objection stating that they reached a tentative agreement to resolve the issues raised in the objection. (ECF No. 66.)

**L. District Judge Jones' Order**

District Judge Jones set a hearing on Hall's objection. (ECF No. 67.) Ladera filed a limited response to the objection on January 25, 2019. Ladera indicated that the parties had tentatively agreed to stipulate to have the court hold the order denying Hall's motion to modify in abeyance, or vacate it, to allow the parties to conduct an evidentiary hearing regarding the issues. (ECF No. 69.)

Judge Jones held a hearing on the objection on February 19, 2019. (Minutes at ECF No. 72, transcript at ECF No. 75.) At the hearing, Ladera acknowledged that K&L should be able to present their position. Mr. Maurice, of K&L, was present at the hearing before Judge Jones. He represented that after Hall tendered to Old Republic, K&L was retained to represent Hall in the Hall Adversary proceedings, to which Ladera was not a party. The purpose of the representation was to establish Hall's first priority in the Hall Adversary proceedings by demonstrating there was no visible work of improvement before they recorded. Then, Ladera subsequently submitted a claim to Old Republic under its own title insurance policy, and Old Republic retained K&L to represent Ladera in the Ladera Adversary to establish that the Ladera deeds of trust were in second priority by demonstrating there was no visible work of improvement before Ladera recorded. Hall was not a party to the Ladera Adversary. Mr. Maurice stated that K&L obtained a conflict waiver from the parties because K&L knew there was an Intercreditor Agreement and it was clear that somewhere down the line these parties would be fighting against each other. Mr. Maurice maintained that while the adversary proceedings were ultimately consolidated for discovery and trial, they were still separate cases and K&L did not represent Ladera in the Hall adversaries and vice-versa.

Ultimately, Judge Jones reversed and vacated Judge Carry's order and remanded for consideration of all objections and presentation of evidence concerning K&L's legal representation of Hall and Ladera. (*See* ECF Nos. 76, 80.)

As was discussed, *infra,* after this case was reassigned to the undersigned as magistrate judge, a status conference was held, and the current briefing ensued.

///

///

# III. DISCUSSION

## A. Motions to Quash or Modify the K&L Subpoena Under FRCP 45(d)(3)(A)(iii), (iv)

Hall moved to modify the subpoena under FRCP 45(d)(3)(A)(iii), which provides that the court is required to modify a subpoena that requires the disclosure of privileged or protected material, if no exception or waiver applies. Hall argued several bases for modifying the subpoena: (1) that K&L should not be required to produce any communication with or information shared by and between K&L and Hall's general counsel (Stephanie Byrd) and its outside counsel Frank Wright and Nathan Aman, which did not involve Ladera's attorneys (ECF No. 40 at 3-4); (2) any communications or work product after K&L's August 15, 2017 letter, recognizing a dispute had arisen between Hall and Ladera, should not be disclosed as that letter redefined the scope of representation of Hall and Ladera (ECF No. 40 at 4); and (3) Ms. Wood indicated that both Hall's and Ladera's privileged documents and communications had been separated, thereby shielding them from disclosure (ECF No. 40 at 4).

Preliminarily, the court agrees with Magistrate Judge Carry that under this scenario—where Hall claims that compliance with the subpoena would require disclosure of privileged or protected material over which it holds the privilege—Hall has standing to challenge a subpoena served on a third party.

Since Judge Carry's order on Hall's motion to modify was vacated and remanded, K&L has moved to quash the subpoena under FRCP 45(d)(3)(A)(iii) as well as under FRCP 45(d)(3)(A)(iv). The former requires a court to quash or modify a subpoena that requires disclosure of privileged or other protected matter if no exception or waiver applies. K&L argues that the joint representation exception to the attorney-client privilege does not apply here, so the subpoena should be quashed because it seeks privileged and protected material. The latter provides that a court must quash or modify a subpoena that subjects a person to undue burden. K&L contends that

the subpoena is unduly burdensome because it already provided Hall's entire client file to Hall; therefore, even if the court does not agree with K&L on the privilege issue, Ladera can utilize Rule 34 to obtain whatever documents it seeks from Hall's client file directly from Hall.

Generally speaking, Ladera has opposed Hall's and K&L's motions on the basis that it is entitled to Hall's entire client file from its representation by K&L because K&L jointly represented Hall and Ladera, and this would extend to communications between K&L and Hall's outside counsel. In addition, Ladera argues that K&L's August 2017 letter did not change the scope of the joint representation.

The court will first address whether the K&L subpoena should be quashed or modified under FRCP 45(d)(3)(A)(iii), which requires an analysis of whether an exception applies to the production of materials that Hall and K&L claim are attorney-client privileged and protected work product.

**1. Attorney Client Privilege, Work Product Doctrine and the Joint Representation Exception**

"The attorney-client privilege is the oldest of the privileges for confidential communications" and "[i]ts purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) (citation omitted).

Federal Rule of Evidence 501 provides, "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Therefore, in a case where the court's jurisdiction is based on diversity, as it is here, state law governs the applicable elements of attorney-client privilege. *See KL Group v. Case, Kay & Lynch,* 829 F.2d 909, 918 (9th

Cir. 1987) (citing Fed. R. Evid. 501). The parties and K&L all agree that Nevada law governs; therefore, the court will apply Nevada attorney-client privilege law to its analysis.

In Nevada, the attorney-client privilege is codified in Nevada Revised Statute (NRS) 49.095, which provides:

> A client has a privilege to refuse to disclose, and to prevent any other person from disclosing confidential communications:
>
> 1. Between the client or the client's representative and the client's lawyer or the representative of the client's lawyer.
>
> 2. Between the client's lawyer and the lawyer's representative.
>
> 3. Made for the purpose of facilitating the rendition of professional legal services to the client, by the client or the client's lawyer to a lawyer representing another in a matter of common interest.

NRS 49.095.

On the other hand, federal law determines whether the work product doctrine applies. *See Connolly Data Systems, Inc. v. Victor Technologies, Inc.*, 114 F.RD. 89, 95 (S.D. Cal. 1987); *United Coal Cos. v. Powell Constr. Co.*, 839 F.2d 958, 966 (3d Cir. 1988) ("Unlike the attorney client privilege, the work-product privilege is governed, even in diversity cases, by a uniform federal standard embodied in Fed. R. Civ. P. 26(b)(3)[.]") The Supreme Court originally recognized the attorney work product doctrine in *Hickman v. Taylor*, 329 U.S. 495 (1947). "Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant facts, prepare his legal theories and plan his strategy without undue and needless interference." *Id*. at 510. "This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways—aptly though roughly termed by the Circuit Court of Appeals in this case (153 F.2d 212, 223) as the 'Work Product of the lawyer.'" *Id.* It was later codified in FRCP 26(b)(3) and it protects "from discovery documents and tangible things prepared by a party or his representative

18

in anticipation of litigation." ).  It is "a qualified immunity protecting from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation." *Admiral Ins. Co. v. United States Dist. Ct. for Dist. Of Ariz.*, 881 F.2d 1486, 1494 (9th Cir. 1989). It also protects attorneys' thought processes and legal recommendations. *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947). "At its core, the work product doctrine shelters the mental processes of the attorney, providing a privileged area with which he can analyze and prepare his client's case." *United States v. Nobles*, 422 U.S. 225, 238 (1975).

There are various exceptions to the attorney-client privilege under Nevada law. One of the exceptions provides that there is no privilege "[a]s to a communication relevant to a matter of common interest between two or more clients if the communications was made by any of them to a lawyer *retained or consulted in common*, when offered in an action between any of the clients." NRS 49.115(5) (emphasis added). In other words: "'When a lawyer acts as the common attorney of two parties, their communications to him are privileged as far as concerns strangers, but as to themselves they stand on the same footing as to the lawyer, and either can compel him to testify against the other as to their negotiations.'" *Livingston v. Wagner,* 42 P. 290, 292, 23 Nev. 53 (1895) (quoting *In re Bauer's Estate,* 79 Cal. 304, 21 Pac. 759).

This has been referred to as the "joint-client privilege," "joint client doctrine," "common interest exception," and "joint representation exception," among other things. To be consistent, the court will adopt Judge Carry's terminology and will refer to it as the "joint representation exception."

Courts have determined this exception extends to legal files created by an attorney representing co-clients, including any work product in the file. *See e.g. Scroggins v. Powell, Goldstein, Frazer & Murphy (In re Kaleidoscope, Inc.*), 15 B.R. 232, 244 (Bankr. N.D. Ga. 1981),

rev'd on other grounds, 25 B.R. 729 (N.D. Ga. 1982); *Matter of Michigan Boiler & Eng'g Co.*, 87 B.R. 465, 469 (Bankr. E.D. Mich. 1988).

To determine whether the joint representation exception applies, the court must decide if K&L was retained or consulted in common by Hall and Ladera.

As Judge Carry pointed out, K&L never represented Ladera in the Penta lien cases filed in Washoe County, Nevada and Placer County, California.[5] K&L also did not represent Ladera or Hall in the underlying bankruptcy case as they each had separate counsel in the underlying bankruptcy case. That leaves communications between K&L and Hall and K&L, Hall and Ladera in the adversary proceedings, and work product relative to the Hall Adversary proceedings.

K&L did not represent Ladera until K&L was retained by Old Republic to represent Ladera in the Ladera Adversary on March 8, 2017, which is the date K&L sent the first conflict waiver letter to Hall and Ladera. Therefore, any of Hall's attorney-client communications and work product prior to that time would certainly remain privileged and protected. The question is whether the joint representation exception applies to communications between Hall and K&L or Hall, K&L and Ladera *after* K&L began to represent Ladera on March 8, 2017, and the termination of its representation of Ladera in December of 2017.

Under the statute, the exception only applies when the communication was made by Hall to "a lawyer *retained or consulted in common*." The statute does not discuss what it means to retain or consult a lawyer in common. Nor has the Nevada Supreme Court specifically discussed under what circumstances a lawyer is retained or consulted in common. Therefore, the court has looked

---

[5] Judge Carry determined that the joint representation exception did not apply to K&L's Hall file for the Penta mechanic's lien cases filed in state court in Nevada and California as it was undisputed that K&L did not represent Ladera in those cases. Judge Carry directed K&L to provide Ladera a privilege log concerning the documents from its Hall file in those cases that it claimed were privileged/protected.

to other persuasive authority on this topic, and finds a Third Circuit decision—*In re Teleglobe Comm. Corp.*, 493 F.3d 345 (3d Cir. 2007)—which relies heavily on the Restatement (Third) of the Law Governing Lawyers, to be instructive.[6]

"It is often expedient for two or more people to consult a single attorney. The rules of professional conduct allow a lawyer to serve multiple clients on the same matter so long as all clients consent, and there is no substantial risk of the lawyer being unable to fulfill her duties to them all." *In re Teleglobe Comm. Corp.*, 493 F.3d 345, 362 (3d Cir. 2007) (citing Restatement (Third) of the Law Governing Lawyers §§ 128-131). "Just as in single-client representation, the lawyer and co-clients begin their relationship when the co-clients convey their desire for representation, and the lawyer consents." *Id.* (citing § 14). The Third Circuit used the terms "co-clients" and "joint clients" interchangeably, noting that both indicated "multiple clients engaging one or more common attorneys to represent them on a matter of interest to all." *Id.* at n. 15. Courts may find joint representation arises by implication, but the Third Circuit cautioned that "courts must be careful not to imply joint representations too readily[.]" *Id.* (citing *Neighborhood Dev. Collaborative v. Murphy*, 233 F.R.D. 436, 441-42 (D. Md. 2005)).

The Third Circuit pointed out the Restatement's position that "clients of the same lawyer who share a common interest are not necessarily co-clients." *In re Teleglobe*, 493 F.3d at 362 (citing Restatement (Third) of the Law Governing Lawyers § 75, cmt. c). Instead, "[w]hether individuals have jointly consulted a lawyer or have merely entered concurrent but separate representations is determined by the understanding of the parties and the lawyer in light of the circumstances." *Id.*

---

[6] The court relies on *Teleglobe* not for its application of law to fact (as that case involved a corporate scenario), but for its general statements of law on this issue, which assist this court in determining whether Hall and Ladera retained K&L in common.

"[A] wide variety of circumstances are relevant to the determination of whether two or more parties intend to create a joint-client relationship, particularly how the parties interact with the joint attorneys and with each other. These same circumstances are relevant to determining the scope of any joint representation." *In re Teleglobe Comm. Corp.*, 493 F.3d at 363 (citing *Sky Valley Ltd. P'shi v. ATX Sky Valley Ltd.*, 150 F.R.D. 648, 652-53 (N.D. Cal. 1993)). "The keys to deciding the scope of a joint representation are the parties' intent and expectations, and so a district court should carefully consider (in addition to the content of the communications themselves) any testimony from the parties and their attorneys on those areas." *Id*. *Sky Valley* listed many factors taken from the Restatement (Third) of the Law Governing Lawyers that are relevant to whether a joint client relationship exists:

> (1) the conduct of the two parties toward one another, (2) the terms of any contractional relationship (express or implied) that the two parties may have had, (3) any fiduciary or other special obligations that existed between them, (4) the communications between the two parties (directly or indirectly), (5) whether, to what extent, and with respect to which matters there was separate, private communication between either of them and the lawyer as to whom a 'joint' relationship allegedly existed, (6) if there was any such separate, private communication between either party and the alleged joint counsel, whether the other party knew about it, and, if so, whether that party objected or sought to learn the content of the private communication, (7) the nature and legitimacy of each party's expectations about its ability to access communications between the other party and the allegedly joint counsel, (8) whether, to what extent, and with respect to which matters either or both of the alleged joint clients communicated privately with *other* lawyers, (9) the extent and character of any interests the two alleged joint parties may have had in common, and the relationship between common interests and communications with the alleged joint counsel, (10) actual and potential conflicts of interest between the two parties, especially as they might relate to matters with respect to which there appeared to be some commonality of interest between the parties, and (11) if disputes arose with third parties that related to matters the two parties had in common, whether the alleged joint counsel represented both parties with respect to those disputes or whether the two parties were separately represented.

*Sky Valley*, 150 F.R.D. at 652-53.

**2.. Under the Totality of the Circumstances There was No Joint Client**

**Relationship & The Subpoena Should be Modified Under FRCP 45(d)(3)(A)(iii) to**

**The Extent it Seeks Privileged and Protected Materials**

Judge Carry decided that based on the evidence initially presented from Hall and Ladera that K&L jointly represented Hall and Ladera from the time it sent the March 8, 2017 conflict waiver letter until those cases were resolved. Her decision was based primarily on the language utilized in the March 8, 2017 conflict waiver letter.

The use of the phrase "joint representation" in the March 8, 2017 conflict waiver is just one factor, and it does weigh in favor of finding joint representation. When the totality of circumstances are taken into account, as presented in K&L's, Hall's and Ladera's subsequent briefing, it appears that this was an unfortunate use of that phrase, and did not accurately reflect the scope of the representation being provided. After reviewing all of the briefing and evidence, the court concludes that K&L was not retained or consulted in common by Hall and Ladera, and the joint representation exception does not apply to the representation provided to Hall and Ladera from March 8, 2017, until the conclusion of the adversary proceedings in late 2017/early 2018.

While the conflict waiver letters both use the phrase "joint representation," K&L and Hall both maintain, and Ladera does not refute, that: K& L was separately retained by Old Republic to represent Hall in proceedings to which Ladera was not a party, and then subsequently was retained to represent Ladera, in a proceeding to which Hall was not a party; Hall and Ladera never consulted K&L in common; there were no group meetings, telephone conferences, strategy sessions or emails between them; K&L maintained separate files for Hall and Ladera; Hall and Ladera each had separate private counsel in their respective adversary proceedings; K&L directed questions

regarding the insurance policies or Intercreditor Agreement to the parties' separate counsel; Hall and Ladera each had separate coverage counsel; K&L did not communicate to either Hall or Ladera on behalf of the other; K&L made it clear that the scope of representation of each was to establish the priority of their respective deeds of trust. (Maurice Decl., ECF No. 90-4 ¶¶ 6, 10, 17, 22-30; Wood Decl., ECF No. 90-5 ¶¶ 3, 6, 10, 17, 22-30; Byrd Decl., ECF No. 97-2 ¶¶ 6-7.)

K&L submitted *in camera* a declaration from Ms. Wood, and certain email conversations with Ladera, that it contends support its position that there was no joint client relationship. These materials were filed *in camera* because they involve attorney-client privileged communications involving K&L and Ladera. The court previously ordered that K&L serve these supporting documents on Ladera. (ECF No. 89.) The court has reviewed the *in camera* submission. These communications support K&L's claim that it communicated separately with Hall and Ladera, and did not disclose confidential matters of the other when communicating with one; that questions regarding issues outside the scope of K&L's representation of Ladera were referred to separate counsel; that K&L retained separate files for Hall and Ladera; and that Ladera understood that K&L would not disclose its confidential communications absent Ladera's consent.

Hall asserts that it did not seek out joint representation with Ladera from K&L, and maintains it did not jointly retain K&L with Ladera. Hall contends that there was no specific joint representation agreement, and neither joint representation nor waiver of privilege was expected or intended by Hall. Instead, it was Hall's intent and understanding that K&L would maintain a separate file for Hall and that it's communications with K&L and work product would not be shared with others. Furthermore, Hall did not have access to any privileged communications or work product in Ladera's file. (Byrd Decl., ECF No. 97-2 ¶¶ 3, 5-9.)

James Pickett, who is a managing member of Ladera, submitted a declaration in support of Ladera's position. He states that he signed the March 8, 2017 and August 15, 2017 conflicts waivers, and he understood and consented to joint representation of Hall and Ladera in the adversary proceedings. He asserts that no one at K&L ever told him that K&L was maintaining the confidentiality of communications as between Hall and Ladera, (Pickett Decl., ECF No. 98-1.)

The court is presented with a situation where the law firm (K&L) and one of the parties (Hall) maintains that the relationship between the parties was separate, but the other party (Ladera) maintains it was a joint client relationship. The problem is that Ladera's presents no credible evidence to support its position.

Mr. Pickett's declaration is contradicted by his deposition testimony. He claims that Ladera intended to enter into a joint client relationship, but he testified that he never got together with Hall and said, "Hey, let's go retain [K&L] to jointly represent us." (Pickett Depo., ECF No. 97-3 at 3, depo. trans. p. 164:20-25.) Furthermore, he could not recall ever having a meeting or phone call or e-mail that included Ladera, Hall and K&L. (Pickett Depo., ECF No. 97-3 at 5.) He was asked if when he sent communications to K&L and did not copy Hall, he had an expectation that K&L would share that information with Hall, he responded: "I don't remember. It wasn't a thought." (Pickett Depo., ECF No. 97-3 at 6, depo. trans. p. 167:16-20.)

If Ladera had an expectation of joint representation, it is odd that Mr. Pickett could not recall or point to a single instance where there was a joint communication—a joint phone call, a joint email or joint meeting—involving Hall, Ladera and K&L.

Ladera points to the settlement brief filed on behalf of Hall and Ladera with respect to the consolidated adversary proceedings. (*Sealed* at ECF No. 102.) That document, however, provides no further indication of representation. It simply recites the facts that led up to the litigation and

the position taken by Hall and Ladera—that their deeds of trust had priority over the mechanic's liens.

Perhaps the most telling piece of evidence regarding Ladera's understanding and expectation of the relationship between K&L, Hall and Ladera is Ladera's own designation of its communications with K&L as confidential and privileged. (Maurice Decl., ECF No. 90-4 ¶ 34; Wood Decl., ECF No. 90-5 ¶ 34.) If Ladera believed it was being jointly represented with Hall, then it would have known that also entitled Hall to discover Ladera's confidential communications with K&L.

The totality of the circumstances weigh in favor of finding that while K&L's goals in representing Hall and Ladera might have been the same—establishing the priority of their respective deeds of trust over the mechanic's liens—the representation of Hall and Ladera was concurrent but separate.

As a result, K&L is not required to disclose privileged communications or protected work product from K&L's client file for Hall. Therefore, K&L's motion is granted insofar as the court will modify the subpoena such that the disclosure of privileged communications or protected work product is not required. As a result, Hall's motion to modify the subpoena is denied as moot.

The court modifies, but does not quash the subpoena under FRCP 45(d)(3)(A)(iii) , because it is not clear whether K&L's Hall file contains materials that are not privileged or protected that may be responsive to the subpoena. The court will now address whether the K&L subpoena should be quashed under FRCP 45(d)(3)(A)(iv), which requires an analysis of whether requiring K&L to comply with the subpoena to produce responsive, non-privileged and non-protected materials would subject K&L to an undue burden.

///

### 3. FRCP 45(d)(3)(A)(iv)

FRCP 45(d)(3)(A)(iv) allows the court to quash or modify a subpoena that subjects a person to undue burden.

Mr. Maurice has represented that the file it turned over to Hall represents the universe of documents it has with respect to Hall. Mr. McElhinney has represented to the court that he will accept a complete copy of K&L's file from its representation in the adversary proceedings if Hall has a complete copy of the file. (McElhinney Decl., ECF No. 98-7 ¶ 12.) While Ladera is not entitled to a complete copy of K&L's Hall client file, K&L's Hall file may contain information that is not privileged or protected work product which is responsive to the subpoena.

Since Hall is in possession of its client file from K&L, the court agrees that the burden should not be placed on K&L, which is not a party to this action, to determine whether any non-privileged and non-protected documents should be produced. Ladera can request any non-privileged and non-protected documents from Hall under FRCP 34. Hall will then bear the burden of providing Ladera a privilege log for privileged and protected documents, and must then produce any remaining responsive documents (subject to any other valid objection that may apply).

Therefore, insofar as K&L requests that the subpoena be quashed because it imposes an undue burden under FRCP 45(d)(3)(A)(iv), the motion is granted.

**B. K&L's Motion for Sanctions Under FRCP 45(d)(1), or Alternatively for Reasonable Compensation under FRCP 45(d)(3)(C)(ii)**

### 1. FRCP 45(d)(1)

FRCP 45(d)(1) directs that "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." If the party or attorney serving the subpoena fails to do so, the court

"must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees[.]" Fed. R. Civ. P. 45(d)(1).

The Ninth Circuit has interpreted the imposition of sanctions under FRCP 45(d)(1) to be discretionary. *See Legal Voice v. Stormans, Inc.*, 738 F.3d 1178, 1185. "[W]hile failure narrowly to tailor a subpoena may be a ground for sanctions, the district court need not impose sanctions every time it finds a subpoena overbroad; such overbreadth may sometimes result from normal advocacy, which we have said should not give rise to sanctions." *Id*. But a court can "impose sanctions when a party issues a subpoena in bad faith, for an improper purpose, or in a manner inconsistent with existing law." *Id*. "[B]ad faith is a sufficient ground for sanction, but it is not a necessary ground[.]" *Mount Hope Church v. Bash Back!*, 705 F.3d 418, 428 (9th Cir. 2012).

In *Mount Hope,* the appellee asked the Ninth Circuit to read the "undue burden" language in then FRCP 45(c)(1) (now 45(d)(1)) "as including the burdens associated with guarding protected information." The court declined to adopt that reading. Instead, "undue burden" was interpreted as the "burden associated with compliance." *Mount Hope,* 705 F.3d at 417 (citation omitted). The court went on to state: "It would not be correct in law to say that there is undue burden every time a subpoena calls for privileged information. For privileges can be waived, … and even when not waived, there is often a balancing of interests before resolution of a dispute[.]" *Id*. (internal citations omitted).

The court did "not suggest that Rule 45[(d)](1) sanctions are inappropriate where a party subpoenas clearly protected information in bad faith." *Id*. at 429. The court held that "absent undue burden imposed by an oppressive subpoena, a facially defective subpoena, or bad faith on the part of the requesting party, Rule 45[(d)(1)] sanctions are inappropriate." *Id*. "Sanctions for issuing a subpoena are in no way supported merely because a party advocated a position in seeking

discovery that lost in the end." *Id.* "The scope of permissible sanctions under Rule 45[(d)](1) should not be so broad as to chill or deter the vigorous advocacy on which our civil justice system depends." *Id.*

Again, Mr. McElhinney has represented to the court that he will accept a complete copy of K&L's file from its representation in the adversary proceedings if Hall has a complete copy of the file. (McElhinney Decl., ECF No. 98-7 ¶ 12.) The court has granted K&L's motion to quash and ruled that Ladera may request non-privileged and non-protected documents from the Hall file directly from Hall under Rule 34. Therefore, K&L will not be subject to an undue burden in complying with the subpoena. Consistent with *Mount Hope*, the court declines to impose sanctions for K&L's efforts in seeking to guard privileged information. The court does not find that Ladera litigated the issue in bad faith, and while the court has ultimately found against Ladera on the issue in the end, it should not be punished for vigorously advocating its position.

**2. FRCP 45(d)(3)(C)(ii)**

K&L also asks for reasonable compensation under FRCP 45(d)(3)(C)(ii). That rule does not apply here. By its own terms, the rule applies to an order quashing or modifying a subpoena under FRCP 45(d)(3)(B), which pertains to a subpoena that requires disclosure or a trade secret or confidential research, development or commercial information, or disclosing an unretained expert's opinion. Therefore, K&L's request for reasonable compensation under FRCP 45(d)(3)(C)(ii) is denied.

## IV. CONCLUSION

As indicated, *infra,* K&L's submitted their filing in three separate documents: ECF Nos. 90, 91, 92. ECF No. 90 is K&L's response to the briefing on Hall's remanded motion. ECF No. 91 is the motion for sanctions under FRCP 45(d)(1). ECF No. 92 is the motion to quash as well as the motion for reasonable compensation under FRCP 45(d)(3)(C)(ii).

K&L's motion to quash the subpoena (ECF No. 92) is **GRANTED**, as set forth herein; however, the portion of the motion requesting reasonable compensation under FRCP 45(d)(3)(C)(ii) is **DENIED** . Hall's remanded motion to modify the subpoena (ECF No. 40) is **DENIED AS MOOT**. K&L's motion for sanctions under FRCP 45(d)(1) (ECF No. 91) is **DENIED**.

**IT IS SO ORDERED**.

Dated: October 24, 2019.

_____
William G. Cobb
United States Magistrate Judge