# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

HALL CA-NV, LLC, a Texas limited liability company,

    Plaintiff,

vs.

LADERA DEVELOPMENT, LLC, a Nevada limited liability company,

    Defendant.

Case No. 3:18-CV-00124-RCJ-WGC

**ORDER**

Defendant Ladera Development, LLC objects to the Magistrate Judge's Order (ECF No. 111) quashing its subpoena seeking documents from counsel, Kolesar & Leatham (K&L), who had represented both Defendant and Plaintiff Hall CA-NV, LLC. Plaintiff asserts attorney client privilege over the documents, and Defendant counters that privilege is inapplicable because they were joint clients. The Magistrate Judge found they were not joint clients, and the Court affirms.

## LEGAL STANDARD

When a party objects to a magistrate judge's nondispositive order, "[t]he district judge . . . must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *accord* 28 U.S.C. § 636(b)(1)(A).

The clearly erroneous standard is highly deferential and "plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985). Consequently, a reviewing court will find the clearly erroneous standard to be met only when—despite evidence to support the finding—review of "the entire evidence" leaves a "definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948).

**ANALYSIS**

To determine whether the Magistrate Judge's Order is "clearly erroneous or contrary to law" requires a two-step inquiry: First, the Court must review the legal conclusions of the Magistrate Judge as to the applicable law. Second, the Court must review the Magistrate Judge's application of that law to his factual findings.

*1. Applicable Law*

The parties agree that the Magistrate Judge correctly held that Nevada law applies in this case. The relevant Nevada statutes are NRS 49.095 and NRS 49.115. NRS 49.095 provides the general rule defining attorney-client privilege. NRS 49.115 provides exceptions to the general rule, including the exception "[a]s to a communication relevant to a matter of common interest between two or more clients if the communication was made by any of them to a lawyer retained or consulted in common, when offered in an action between any of the clients." NRS 49.115(5).

As the Magistrate Judge noted, the Nevada Supreme Court has never defined "retained or consulted in common." Consequently, the Magistrate Judge correctly turned to persuasive authority to determine when other courts have found a joint representation. The most thorough analysis of the issue is a case from the Third Circuit, *In re Teleglobe Communications Corp.*, 493 F.3d 345 (3d Cir. 2007). However, as *Teleglobe* analyzed the issue in the context of in-house

counsel's responsibilities in a dispute between a corporate parent and subsidiary and the context in the instant case is that of completely separate individual entities with common counsel, this Court finds it more appropriate to begin with the Restatement upon which *Teleglobe* so heavily relies:

> Whether a client-lawyer relationship exists between each client and the common lawyer is determined under [the principles of attorney-client relationship formation], specifically whether they have expressly or impliedly agreed to common representation in which confidential information will be shared. A co-client representation can begin with a joint approach to a lawyer or by agreement after separate representations had begun. However, clients of the same lawyer who share a common interest are not necessarily co-clients. *Whether individuals have jointly consulted a lawyer or have merely entered concurrent but separate representations is determined by the understanding of the parties and the lawyer in light of the circumstances . . . .*
> *The scope of the co-client relationship is determined by the extent of the legal matter of common interest . . . .*
> [I]n a subsequent proceeding in which former co-clients are adverse, one of them may not invoke the attorney-client privilege against the other with respect to communications involving either of them during the co-client relationship. That rule applies whether or not the co-client's communication had been disclosed to the other during the co-client representation, unless they had otherwise agreed.

Restatement (Third) of the Law Governing Lawyers § 75 cmt. c–d (Am. Law. Inst. 2000) (emphasis added). Accordingly, the Court finds the applicable law as follows: NRS 49.115(5) applies where two or more now-adverse parties were previously in a joint-client relationship regarding a specific common interest. Hence, a court should find a joint-client relationship when the facts show that the parties explicitly or impliedly intended to enter such a relationship. This is precisely the reading of the law presented by the Magistrate Judge; therefore, all that remains is review of the Magistrate Judge's application of the law.

*2. Magistrate Judge's Findings*

The parties' arguments can essentially be boiled down to two main contentions: Defendant argues that the inclusion of the "joint representation" language in the two conflict waivers explicitly defines the co-client relationship of Plaintiff and Defendant, and that any subsequent

analysis of the parties' conduct is in error. Plaintiff and K&L argue that, despite the "joint representation" language in the conflict waivers, the conduct of the parties demonstrates that no co-client relationship existed between Plaintiff and Defendant.

Defendant notes that it "has found no case in which a Nevada court applied a 'totality of the circumstances' test to an explicit joint representation agreement," and that the Magistrate Judge's examination of the parties' conduct was in error. (ECF No. 112 at 9:7–9.) However, Defendant has not presented the Court with a joint representation agreement, it has only pointed to the two conflict of waiver letters. Admittedly, the initial conflict waiver letter explicitly uses the phrase "joint representation" to describe the proposed relationship, (*see* ECF No. 43 Ex. 1 at 2 ("The purpose of this letter is to describe the proposed joint representation of Hall CA-NV, LLC and Ladera Development, LLC . . . .")), and the second letter affirms this description. (*See* ECF No. 43 Ex. 2 at 2 ("Hall CA-NV, LLC and Ladera Development, LLC consented to joint representation by K&L . . . .").) Furthermore, in K&L's letter responding to the initial subpoena to Ms. Wood, the letter included the phrase "[d]ue to the joint representation." (ECF No. 42 Ex. 3 at 3.)[1] Nonetheless, this Court cannot say the Magistrate Judge's determination that the letters did not constitute a formal joint representation agreement was clearly erroneous. *See Anderson*, 470 U.S. at 574 ("Where there are two permissible views of the evidence, the factfinder's choice between them *cannot* be clearly erroneous.") (emphasis added). Accordingly, the Court affirms the finding that there was no explicit co-client relationship and further analysis to determine whether there was an implied co-client relationship was proper.

As noted above, "review of factual findings under the clearly-erroneous standard—with its deference to the trier of fact—is the rule, not the exception." *Id.* at 575. Review of the entire

---

[1] However, the letter also discussed the firm's screening procures, which cuts against joint representation.

evidence reveals two competing narratives: Defendant argues that its understanding, contemporaneous with the representation, was that the relationship was a joint-client relationship and that materials were unprivileged between K&L, Plaintiff, and Defendant. (*See, e.g.*, ECF No. 98 Ex. 1 at ¶¶ 9–14.) Plaintiff and K&L argue that their understanding, contemporaneous with the representation, was that it was concurrent but separate. (*See, e.g.*, ECF No. 92 Ex. 4 at ¶¶ 17–19; ECF No. 92 Ex. 5 at ¶¶ 17–19; ECF No. 97 Ex. 2 at ¶¶ 8–9; *in camera* Ex. A.) Here, the Magistrate Judge found credibility in the declarations of K&L and Plaintiff and found the declaration by Mr. Pickett of Defendant to be "contradicted by his deposition testimony." (ECF No. 111 at 23:17–25:20.) Along with other evidence, this was sufficient for the Magistrate Judge to find that "the representation of Hall and Ladera was concurrent but separate." (ECF No. 111 at 26:9–12.) Review of the record does not demonstrate that this finding is clearly erroneous or contrary to law. Accordingly, the Court affirms the Magistrate Judge's Order.

## CONCLUSION

IT IS HEREBY ORDERED that the Magistrate Judge's Order (ECF No. 111) is AFFIRMED.

IT IS SO ORDERED.

Dated this 2nd day of March, 2020.

_____
ROBERT C. JONES
United States District Judge