UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| HALL CA-NV, LLC,<br>a Texas limited liability company,<br><br>  Plaintiff,<br><br>vs.<br><br>LADERA DEVELOPMENT, LLC,<br>a Nevada limited liability company,<br><br>  Defendant. | Case No. 3:18-cv-00124-RCJ-WGC<br><br>**ORDER** |

Defendant moves for partial summary judgment on the issue of choice of law. Defendant asks this Court to rule that all the claims and counterclaims of this case shall be governed by Nevada substantive law in spite of a choice-of-law provision that dictates that Texas substantive law shall apply. The Court finds the choice-of-law provision was the product of good faith negotiations, Texas has a substantial relationship with the contract, application of Texas law does not violate a fundamental public policy of Nevada, and the provision is broad enough to cover all of the claims and counterclaims of this case. The Court accordingly denies the motion and holds that Texas substantive law governs this case.

///

## FACTUAL BACKGROUND

New Cal-Neva Lodge, LLC ("Borrower") sought to remodel the Cal Neva Resort and Lodge located in the City of Crystal Bay, Washoe County, Nevada and in Placer County, California (the "Property"). On September 30, 2014, Borrower entered into three contracts, which are essential to this case: Borrower and Hall signed a document titled Construction Loan Agreement ("CLA") by which Hall agreed to lend Borrower $29,000,000. Borrower and Ladera signed a Junior Loan Agreement ("JLA") by which Ladera agreed to lend Borrower $6,000,000. All three parties signed a contract titled Intercreditor and Subordination Agreement ("ISA") dictating that the JLA loan was fully subordinate to the CLA loan and placing restrictions on Ladera's ability to challenge Hall and Borrower's relationship. The ISA also contained the following choice of law provision:

> **Construction and Interpretation of this Agreement**. This Agreement shall be governed by and construed in accordance with the internal laws of the State of Texas, without regard to the conflict of laws principles thereof, as to its interpretation, enforcement, validity, construction, effect and in all other respects.

(ECF No. 133 Ex. 3 ¶ 16.)

The ISA also incorporates by reference contracts between the parties in addition to the CLA and the JLA, including the underlying Promissory Note related to the CLA. The Promissory Note contained the following provisions:

- Business Day: A weekday, Monday through Friday, except a legal holiday or a day on which banking institutions in *Dallas, Texas* are authorized or required by law to be closed. Unless otherwise provided, the term "days" when used herein shall mean calendar days. (ECF No. 133 Ex. 6 at 1 (emphasis added).)

- Maximum Lawful Rate: The maximum lawful rate of interest which may be contracted for, charged, taken, received or reserved by Lender in accordance *with the applicable laws of the State of Texas* (or applicable United States federal law to the extent that such law permits Lender to contract for, charge, take, receive or reserve a greater amount of interest than under Texas law), taking into account all Charges made in connection with the transaction evidenced by this Note and the other Loan Documents. (*Id.* at 3 (emphasis added).)

- Section 2.3. PAYMENTS. *All payments under this Note made to Lender shall be made in immediately available funds at 6801 Gaylord Parkway, Suite 100, Frisco, Texas 75034 (or at such other place as Lender, in Lender's sole discretion, may have established by delivery of written notice thereof to Borrower from time to time), without offset, in lawful money of the United States of America, which shall at the time of payment be legal tender in payment of all debts and dues, public and private. Payments by check or draft shall not constitute payment in immediately available funds until the required amount is actually received by Lender in full. Payments in immediately available funds received by Lender in the place designated for payment on a Business Day prior to 11 :00 a.m. Dallas, Texas time at said place of payment shall be credited prior to the close of business on the Business Day received, while payments received by Lender on a day other than a Business Day or after 11 :00 a.m. Dallas, Texas time on a Business Day shall not be credited until the next succeeding Business Day . . . .* (*Id.* at 5–6.)

- Section 4.6. GOVERNING LAW; SUBMISSION TO JURISDICTION. *This Note is executed and delivered as an incident to a lending transaction negotiated and consummated in Dallas County, Texas, and shall be governed by and construed in accordance with the laws of the State of Texas.* Borrower, for itself and its successors and assigns, hereby irrevocably (i) *submits to the nonexclusive jurisdiction of the state and federal courts in Dallas County, Texas*, (ii) *waives, to the fullest extent permitted by law, any objection that it may now or in the future have to the laying of venue of any litigation arising out of or in connection with this Note or any Loan Document brought in the District Court of Dallas County, Texas*, (iii) waives any objection it may now or hereafter have as to the venue of any such action or proceeding brought in such court or that such court is an inconvenient forum, and (iv) agrees that any legal proceeding against any party to any of the Loan Documents arising out of or in connection with any of the Loan Documents may be brought in one of the foregoing courts. Nothing herein shall affect the right of Lender to serve process in any other manner permitted by law or shall limit the right of Lender to bring any action or proceeding against Borrower or with respect to any of Borrower's property in courts in other jurisdictions. The scope of each of the foregoing waivers is intended to be all encompassing of any and all disputes that may be filed in any court and that relate to the subject matter of this transaction, including, without limitation, contract claims, tort claims, breach of duty claims, and all other common law and statutory claims. Borrower acknowledges that these waivers are a material inducement to Lender's agreement to enter into the agreements and obligations evidenced by the Loan Documents, that Lender has already relied on these waivers and will continue to rely on each of these waivers in related future dealings. The waivers in this Section 4.6 are irrevocable, meaning that they may not be modified either orally or in writing, and these waivers apply to any future renewals, extensions, amendments, modifications, or replacements in respect of any and all of the applicable Loan Documents. In connection with any litigation, this Note may be filed as a written consent to a trial by the court. (*Id.* at 10.)

///

The ISA's forum selection clause was the result of much negotiation between Ladera and Hall. A number of emails and phone call records detail that Hall initially proposed the Texas choice of law, Ladera through counsel attempted to switch the choice of law to California, but Hall stated that suggestion was a "non-starter." (ECF No. 133 Exs. 4–9.) The parties finally settled on the Texas law.

In 2016, Borrower filed a voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of California. The bankruptcy case was subsequently transferred to the United States Bankruptcy Court for the District of Nevada, Case No. 16-51282-gwz. During the course of this bankruptcy case, Hall contends that Ladera violated its obligations under the ISA. Hall brings suit in this Court and these claimed violations form the basis of this suit against Ladera. (ECF No. 23.) In Ladera's counterclaims, it argues the ISA was the product of fraudulent or negligent misrepresentations and seeks declaratory relief that the contract is void ab initio as well as damages, fees, and costs. (ECF No. 26.)

## LEGAL STANDARD

A court should grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Only facts that affect the outcome are material. *Id.*

To determine when summary judgment is appropriate, courts use a burden-shifting analysis. On the one hand, if the party seeking summary judgment would bear the burden of proof at trial, then he can only satisfy his burden by presenting evidence that proves every element of his claim such that no reasonable juror could find otherwise assuming the evidence went uncontroverted. *Id.* at 252. On the other hand, when the party seeking summary judgment would

not bear the burden of proof at trial, he satisfies his burden by demonstrating that the other party failed to establish an essential element of the claim or by presenting evidence that negates such an element. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (Brennan J., concurring). A court should deny summary judgement if either the moving party fails to meet his initial burden or, if after he meets that burden, the other party establishes a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

**ANALYSIS**

Ladera argues that the choice of law provision in the ISA should not be enforced because Texas does not have a "substantial relationship" to the action[1] and argues, even if it is enforceable, it should not apply to its claims of misrepresentation. The Court disagrees and holds that Texas law governs all of the claims and counterclaims in this case.

First, Texas does have a substantial connection to this case. Nevada largely applies the Restatement (Second) of Conflict of Laws (1971) for determining applicable law. *See, e.g.*, *Sotirakis v. United Serv. Auto. Ass'n*, 787 P.2d 788, 790 (Nev. 1990). Under Nevada law, "parties are permitted within broad limits to choose the law that will determine the validity and effect of their contract." *Ferdie Sieyers & Lake Tahoe Land Co. v. Diversified Mortg. Inv'rs.*, 603 P.2d 270, 273 (Nev. 1979) (citing Restatement (Second) of Conflicts of Laws § 187). "The situs fixed by the agreement, however, must have a substantial relation with the transaction, and the agreement must not be contrary to the public policy of the forum." *Id.* (internal citations omitted). Comment f of Restatement (Second) of Conflicts of Laws § 187 states that a substantial relationship would be

---

[1] For the first time in its reply, Ladera argues that the clause also violates Nevada's public policy. The Court denies this argument as improperly raised. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief."). Even if this Court were to consider this argument, the public policy must be "fundamental," *Progressive Gulf Ins. Co. v. Faehnrich*, 327 P.3d 1061, 1064 (Nev. 2014), and Ladera provides no argument as to how Nevada's statutory rights of mechanic's liens—the public policy on which Ladera bases this argument—is fundamental.

found "when this state is that where performance by one of the parties is to take place *or* where one of the parties is domiciled *or* has his principal place of business" among other bases (emphasis added).

Hall is domiciled in Texas, the contractual relationship of the parties encompassed money coming from Texas with payments directed to Texas and incorporated Promissory Note to the CLA indicates that negotiations occurred in Texas. The Court finds that these connections with Texas are more than sufficient to satisfy that Texas has a substantial relationship to the ISA. *See Ferdie Sieyers & Lake Tahoe Land Co.*, 603 P.2d at 273.

As Texas bears a substantial relationship with the ISA, the choice-of-law provision was the result of good faith negotiations, and application of Texas law does not violate a fundamental policy of the state with the most significant relationship to the agreement, the Court finds that the provision governs this case.

Second, the Court holds that the choice-of-law provision applies to Ladera's counterclaims that the ISA was the product of fraudulent misrepresentations, negligent misrepresentations, and/or unilateral mistake. These claims are attempts to invalidate the ISA. (*See* ECF No. 26 (seeking "an Order rescinding the Intercreditor and Subordination Agreement and declaring the same void ad initio"). The parties have not presented a case whereby Nevada has addressed whether tort claims attacking the validity of a contract are governed by a choice-of-law provision (nor is the Court aware of any such case).

The Court finds *Sparling v. Hoffman Const. Co.*, 864 F.2d 635, 641 (9th Cir. 1988) instructive. In that case, the Ninth Circuit was faced with an identical issue. There was no case from Washington state on whether choice-of-law clauses apply to tortious claims of fraud and misrepresentation attacking a contract. *Id.* ("There are apparently no Washington cases on the issue."). The Ninth Circuit relied on the Restatement (Second) Conflict of Laws § 201, calling it

the "traditional view" and assumed that Washington courts would apply this test. *Id.* Under it, claims of fraud and misrepresentation are governed by the choice-of-law provisions unless the claim is that the choice-of-law provision itself was the product of the fraud or misrepresentation. *Id.*[2]

This Court finds that Nevada courts would likely follow the same traditional view especially in light of the fact that Nevada courts generally follow the Restatement (Second) Conflict of Laws. Accordingly, the Court holds that the choice-of-law provision governs all of the claims and counterclaims of this case.

///

///

///

///

///

///

///

///

///

///

///

---

[2] Ladera points to *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F. 3d 719, 726–28 (5th Cir. 2003) as supporting its position that fraud and misrepresentation claims attacking a contract should be governed by the tort choice-of-law analysis in spite of a choice-of-law provision in the contract (at least under Texas's choice of law test). However, the Fifth Circuit only ruled the choice-of-law provision at issue did not cover the fraud and misrepresentation claims because the provision was narrow, "deal[ing] only with the construction and interpretation of the contract." *Id.* at 726. *Benchmark Elecs.* actually supports Hall's position as the choice-of-law provision in this case covers "interpretation, enforcement, *validity*, construction, *effect* and *in all other respects*." (ECF No. 133 Ex. 3 at 13–14 (emphasis added).

**CONCLUSION**

IT IS HEREBY ORDERED that Motion for Partial Summary Judgment (ECF No. 123) is DENIED.

IT IS SO ORDERED.

Dated September 9, 2021.

_____
ROBERT C. JONES
United States District Judge