1   N

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ATTORNEYS AND
COUNSELORS AT LAW
Office: (775) 284-8888 Fox: (775) 284-3838
P. O. Box 62 – RENO, NEVADA 89504
327 CALIFORNIA AVENUE – RENO, NEVADA 89509

VILORIA,
OLIPHANT,
OSTER &
AMAN L.L.P.

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA (RENO)**

**HALL CA-NV, LLC., a Texas limited liability company,**

**Plaintiff,**

vs.

**LADERA DEVELOPMENT, LLC, a Nevada limited liability company,**

**Defendant.**

**LADERA DEVELOPMENT, LLC, a Nevada limited liability company,**

**Counter-Claimant,**

vs.

**HALL CA-NV, LLC, a Texas limited liability company,**

**Counter-Defendant.**

**Case No:  3:18-cv-00124-RCJ-CSD**

**JOINT PRETRIAL ORDER**

119135131.1

-1-

**JOINT PRETRIAL ORDER**

Pursuant to Local Rule 16-3, and this Honorable Court's July 26, 2022 Order (ECF No. 171), Plaintiff/Counterdefendant Hall CA-NV, LLC ("Hall") and Defendant/Counterclaimant Ladera Development, LLC ("Ladera") (collectively "the Parties") hereby submit the following Proposed Joint Pretrial Order:

**(1)  A concise statement of the nature of the action and the parties' contentions;**

On March 21, 2018, Hall CA-NV, LLC filed this action against Ladera Development, LLC with respect to causes of action stemming from Ladera's alleged breach of a certain Intercreditor Agreement with Hall. Ladera brought three counterclaims against Hall, including Fraudulent Misrepresentation, Negligent Misrepresentation, and Declaratory Relief seeking a declaration that the Intercreditor Agreement was void or voidable.

In connection with the Cal-Neva resort restoration project, Hall (the Senior Lender) and Ladera (the Junior Lender) entered into an Intercreditor Agreement. The Intercreditor Agreement prohibited Ladera from taking certain actions as the junior lender, including in the event of the borrower's bankruptcy. Here, the borrower did, in fact, file bankruptcy. This Court ruled that "Hall has successfully shown Defendant Ladera is liable for breach of contract for contesting Plaintiff Hall's superior loan status in the Bankruptcy Court." (ECF No. 171, 726/22 Order at 2.)[1]

On March 29, 2022, this Court entered an Order granting partial summary judgment in favor of Hall on Ladera's counterclaims and defenses, including Fraudulent Inducement, Negligent Misrepresentation, and defenses of Unilateral Mistake, Mutual Mistake, and Failure to Comply with a Condition Precedent.  The Court found that the Intercreditor Agreement was

---

[1] Ladera contends that it never contested Hall's superior loan status in the Bankruptcy Court and that whether Ladera violated valid portions of the Intercreditor Agreement during the bankruptcy proceedings is still an issue to be determined.

ATTORNEYS AND
COUNSELORS AT LAW
Office: (775) 284-8888 Fax: (775) 284-3838
P. O. BOX 62 – RENO, NEVADA 89504
327 CALIFORNIA AVENUE – RENO, NEVADA 89509

VILORIA,
OLIPHANT,
OSTER &
AMAN L.L.P.

1    enforceable, but that Hall was not entitled to "the title insurance that Defendant Ladera acquired

2    to solely protect its interest in the Property."  (ECF No. 157, 3/29/22 Order at 21.)

3         On July 26, 2022, this court entered a further Order reconsidering its previous holding and

4    now ruling that "Plaintiff Hall is entitled to the insurance proceeds from the Ladera Insurance

5    Policy."  (ECF No. 171, 7/26/22 Order at 14.)    The Court stated that "Plaintiff Hall has

6    successfully shown Defendant Ladera is liable for breach of contract for contesting Plaintiff Hall's

7    superior loan status in the Bankruptcy Court," but that "Plaintiff Hall's damages for this breach

8    remain unresolved."  (*Id.* at 2.)

9

10        Hall contends that the amount of such damages remains to be resolved at trial, as well as

11   entry of a final judgment in favor of Hall in accordance with, and to more specifically implement,

12   the Court's summary judgment rulings on Hall's breach of contract claims and declaratory

13   judgment claim.  Pursuant to the declaratory relief ruling, Hall will seek final judgment on that

14   issue, which provides for enforcement of the relief granted with respect to the recovery by Hall

15   against the Ladera title insurance policy.

16

17        Ladera contends that Hall is not entitled to any damages because it failed to produce

18   evidence of its alleged damages during discovery and because it failed to provide "a computation

19   of each category of damages" as required by Fed. R. Civ. P. 26(a)(1)(A)(iii).  *See* Fed. R. Civ. P.

20   37(c)(1); *Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1177 (9th Cir. 2008) (affirming the

21   preclusion of damages evidence as a sanction "for failure to disclose damage calculations under

22   Rule 26(a)").  Hall's response is that most of the documentation is invoices for attorney's fees and

23   costs in the current litigation, and thereby could not be produced in the discovery period as they

24   were protected by privilege and attorney work product and were changing monthly until the Court

25   ruled in favor of Hall.

26

27        Ladera further contends that Hall seeking attorneys' fees in the current action is premature.

28   This action is not yet over and Hall would first need to be adjudicated as the prevailing party.  To

ATTORNEYS AND
COUNSELORS AT LAW
Office: (775) 284-8888 Fax: (775) 284-3838
P. O. BOX 62 – RENO, NEVADA 89504
327 CALIFORNIA AVENUE – RENO, NEVADA 89509

VILORIA,
OLIPHANT,
OSTER &
AMAN L.L.P.

ATTORNEYS AND
COUNSELORS AT LAW
Office: (775) 284-8888 Fax: (775) 284-3838
P. O. BOX 62 – RENO, NEVADA 89504
327 CALIFORNIA AVENUE – RENO, NEVADA 89509

VILORIA,
OLIPHANT,
OSTER &
AMAN L.L.P.

the extent Hall is seeking attorneys' fees related to the bankruptcy proceeding and its state court action against Ladera that was removed to the bankruptcy court as a related adversarial action, (1) Hall should have moved for those fees in the bankruptcy action; and (2) at a minimum, Hall should have disclosed its alleged damages and the attorneys' fees invoices on which they are purportedly based during discovery in this case.  As Hall did neither, Ladera contends Hall is not entitled to present such evidence now and is precluded from obtaining attorneys' fees as an element of damages in this case.  Hall's position is that it is the prevailing party pursuant to this Court's Orders from March 29, 2022 (ECF 157) and July 26, 2022 (ECF 171), it was not necessary or required to move for fees in the bankruptcy action, and Hall has timely produced its invoicing to support oral testimony on its fees and costs to establish the element of its breach of contract damages. Further, Hall contends it timely disclosed its witnesses on attorney fees in it Rule 26 disclosure, expert witness designation, and stipulation regarding the testimony of one of Hall's counsel.

**(2) A statement of the basis for this court's jurisdiction with specific legal citations**;

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C § 1332(a).

**(3) A statement of all uncontested facts deemed material in the action**;

1.   New Cal-Neva Lodge, LLC ("Borrower") previously owned a certain property that straddles the border of Nevada and California located in Crystal Bay, Washoe County, Nevada and in Placer County, California (the "Property").

2.   Borrower acquired the Property in February 2013 and operated a resort hotel on it known as the "Cal-Neva Lodge."

3.   On June 26, 2013, Borrower and Plaintiff Hall CA-NV, LLC ("Plaintiff Hall") entered into a letter of engagement by which Plaintiff Hall tentatively agreed to provide Borrower with a loan for $29,000,000 "to pay expenditures related to the renovation of improvements on the Property." (ECF No. 145 Ex. 2 ("June 26 Letter").)

4.   Per the letter, final approval of the loan would be based upon certain conditions being met such as a renovation plan approved by Plaintiff Hall. (*Id.*)[2]

5.   Over the next fifteen months, Plaintiff Hall and Borrower negotiated the terms of the loan, reviewed construction plans, and made modifications before the loan closed on September 30, 2014. (*See* ECF No. 139 Ex. 1 ("Construction Loan Agreement").)

6.   Under this agreement, Plaintiff Hall would loan the money out over time with monthly installments as needed. (*Id.* § 12.)[3]

7.   Borrower and Defendant Ladera entered into an agreement whereby Defendant Ladera would loan $6,000,000 to Borrower "in connection with the refinance, renovation, ownership and operation" of the Property, which loan also closed on September 30, 2014. (ECF No. 139 Ex. 3 ("Junior Loan Agreement").)

8.   Defendant Ladera indicated that the loan was worth the risk involved if Ladera's loan were to be second in priority only to Plaintiff Hall's loan, which Plaintiff Hall acknowledged in an internal memorandum dated September 15, 2014. (ECF No. 145 Ex. 11 ("Hall Memo") at 2 ("Ladera is requiring a 2nd lien secured by the property, and a pledge of the Borrower partnership interest.").)[4]

9.   Before the September 30, 2014 closing date, Plaintiff Hall and Defendant Ladera entered into a separate agreement, whereby Plaintiff Hall's loan would be senior to Defendant Ladera's loan. (ECF No. 139 Ex. 4 ("Intercreditor Agreement").)

10. The Intercreditor Agreement imposed a number of duties onto Defendant Ladera, including:

ATTORNEYS AND
COUNSELORS AT LAW
Office: (775) 284-8888 Fax: (775) 284-3838
P. O. Box 62 – Reno, Nevada 89504
327 California Avenue – Reno, Nevada 89509

VILORIA,
OLIPHANT,
OSTER &
AMAN L.L.P.

---

[2] Order (ECF No. 171, P. 3, L. 5-13)
[3] Order (ECF No. 171, P. 3, L. 14-17)
[4] Order (ECF No. 171, P. 3, L. 18-23; P. 4, L 1-3)

119135131.1

-5-

1. "Junior Lender shall not in any manner interfere with Senior Lender's security interests in the Property unless and until all of the Senior Debt is no longer outstanding." (*Id.* at 4.)

2. "Junior Lender agrees that it will not at any time contest the validity, perfection, priority or enforceability of any of the Senior Debt, any of the Senior Loan Documents, or any of the liens and security interests of Senior Lender in the Property or other collateral securing the Senior Debt." (*Id.* at 5.)

3. "Junior Lender  agrees that in connection with any Insolvency Proceeding commenced by or against Borrower or any member of Borrower, it will… not take any action or vote in any way so as to (A) contest the legality, validity or enforceability of this Agreement or any Senior Loan Document . . . ." (*Id.* at 11.)

4. "Notwithstanding anything to the contrary contained in this Agreement, during the continuance of any Insolvency Proceeding, the Senior Debt shall first be indefeasibly paid and satisfied in full in cash before any payment or distribution of cash or other property is made upon the Junior Debt. In any Insolvency Proceeding, any payment or distribution which may be payable or deliverable with respect to the Junior Debt shall be paid or delivered directly to Senior Lender for application to the payment and satisfaction of the Senior Debt unless and until the Senior Debt shall have been indefeasibly paid and satisfied in full in cash." (*Id.* at 10.)

5. "If applicable, Junior Lender agrees to vote for any plan of reorganization approved by Senior Lender in respect of Borrower in any Insolvency Proceeding respecting Borrower; provided, however, that Senior Lender agrees not to unreasonably withhold or delay its consent to Junior Lender's voting for a different plan of reorganization if (i) the different plan is at least as beneficial to Senior Lender (including without limitation with respect to Senior Lender's payment, lien and remedy rights thereunder) as the plan approved by Senior Lender, and (ii) Junior Lender agrees in writing (A) that any payments received by Junior Lender by virtue of such Insolvency Proceeding will be held by Junior Lender in trust for the benefit of Senior Lender until such time as the Senior Debt is satisfied in full, and (B) if the Senior Debt will not be satisfied in full by virtue of such Insolvency Proceeding, promptly pay over to Senior Lender the payments so held in trust up to the amount of the deficiency." (*Id.*)

6. "Junior Lender agrees not to oppose any post-petition motion filed or supported by Senior Lender, including, without limitation, motions for adequate protection with respect to the ordinary course of its business or for post-petition borrowing from Senior Lender." (*Id.* at 12.)

7. "Junior Lender shall release insurance proceeds and condemnation awards, to be applied to the restoration of the Property or to payment of the indebtedness evidenced and secured by the Senior Loan Documents, in the same manner as Senior Lender, under, the terms and provisions of the Senior Loan

ATTORNEYS AND
COUNSELORS AT LAW
Office: (775) 284-8888 Fax: (775) 284-3838
P. O. BOX 62 – RENO, NEVADA 89504
327 CALIFORNIA AVENUE – RENO, NEVADA 89509

VILORIA,
OLIPHANT,
OSTER &
AMAN L.L.P.

Documents, so that no conflicts are created by and among Senior Lender, Junior Lender, or others in the application of insurance proceeds or condemnation awards. Senior Lender has the sole and exclusive right, as against Junior Lender, to adjust settlement of insurance claims under the insurance policies in the event of any covered loss or destruction. All proceeds of such insurance related to the Property shall inure to the Senior Lender, and Junior Lender shall cooperate (if necessary) in a reasonable manner in effecting the payment of such insurance proceeds to Senior Lender. In the event Senior Lender permits the Borrower to utilize the proceeds of insurance to replace any part of the Property, the consent of Senior Lender shall be deemed to include the consent of Junior Lender." (*Id.* at 5.)[5]

11. Plaintiff Hall purchased a title insurance policy from Old Republic National Title Insurance Company ("Old Republic"), which Old Republic has taken the position fails to cover any superior mechanics' lien arising from Penta's prior work on the Property. (ECF No. 145 Ex. 22 ("Hall Insurance Policy") at LAD006948, LAD006973 (omitting standard coverage for "[t]he lack of priority of the lien of the Insured Mortgage upon the Title . . . as security for each and every advance of proceeds of the loan secured by Insured Mortgage over any statutory lien for services, labor, or material arising from construction of an improvement or work related to the land when the improvement or work is either (i) contracted for or commenced on or before Date of Policy; or (ii) contracted for, commenced, or continued after Date of Policy if the construction is financed, in whole or in part, by proceeds of the loan secured by the Insured Mortgage that the Insured has advanced or is obligated on Date of Policy to advance ").)[6]

12. Defendant Ladera also purchased title insurance from Old Republic (ECF No. 145 Ex. 23 ("Ladera Insurance Policy").)

13. Unlike the position taken by Old Republic as to Plaintiff Hall's insurance policy, Defendant Ladera's insurance policy did cover mechanics' liens. (*Id.*)[7]

---

[5] Order (ECF No. 171, P. 4, L. 4-24; P. 5, L. 1-9)
[6] Order (ECF No. 171, P. 5, L. 11-18)
[7] *See* Order (ECF No. 171, P. 5, L. 18-20)

ATTORNEYS AND
COUNSELORS AT LAW
Office: (775) 284-8888 Fax: (775) 284-3838
P. O. Box 62 – Reno, Nevada 89504
327 California Avenue – Reno, Nevada 89509

VILORIA,
OLIPHANT,
OSTER &
AMAN L.L.P.

ATTORNEYS AND
COUNSELORS AT LAW
Office: (775) 284-8888 Fox: (775) 284-3838
P. O. BOX 62 ~ RENO, NEVADA 89504
327 CALIFORNIA AVENUE ~ RENO, NEVADA 89509

VILORIA,
OLIPHANT,
OSTER &
AMAN L.L.P.

14. Before the parties closed the loans in September 2014, some construction work was performed on the Property from fall 2013 to January 2014. This work included the following: work on a model room, repair the roof, replace the boiler, remove trees, and abatement work for asbestos. (ECF No. 145 Ex. 5 ("Jaynes Depo") at 89:2–22.)

15. To complete this work, Borrower hired the PENTA Building Group ("Penta"). Plaintiff Hall's 30(b)(6) witness, Michael Jaynes, admits that he was aware of this construction work by late 2013. (*Id.* at 63:8–11.)[8]

16. Under Nevada Revised Statutes Chapter 108, contractors generally enjoy a lien on properties on which they have performed work. Nev. Rev. Stat. § 108.225. These liens are prior over subsequent deeds of trust and mortgages. Nev. Rev. Stat. §§ 108.2453, 108.2457. As such, Penta arguably had a first-in-line lien on the Property, giving Penta's lien priority over Plaintiff Hall's and Defendant Ladera's deeds of trust.[9]

17. Between the 2013 work and the closing of the loans, Plaintiff Hall and Penta made several representations that at least appeared to posit that Penta had not performed any work on the Property before the closing of the loans.

18. First, there was a document titled "Contractor's Agreement and Consent to Assignment of Construction Documents," which Penta and Plaintiff Hall signed on September 29, 2014. (ECF No. 145 Ex. 17 ("Contractor's Agreement").) This document states:

> Under the Agreement, no work of any kind (including the destruction or removal of any existing improvements, site work, clearing, grubbing, draining, or fencing) has been commenced or performed on the property described in the Agreement and no equipment, or materials have been delivered to the property described in the agreement for any purpose whatsoever. (*Id.* at 1.)

---

[8] Order (ECF No. 171, P. 6, L. 3-8)
[9] Order (ECF No. 171, P. 6, L. 9-13)

The Contractor's Agreement defines the term "Agreement" collectively to include "any other agreements executed by [Penta] and [Borrower] in connection with the [Property]." (*Id.*)[10]

19. Second, the deeds of trust providing Defendant Ladera with a lien on the Property list Defendant Ladera as having a "second priority lien." (ECF No. 145 Ex. 13 ("Deeds of Trust") at 1.) This is in spite of the fact that Penta arguably had the first-in-line lien, making Plaintiff Hall the second-in-line lien and Defendant Ladera the third-in-line lien.[11]

20. Third, several places in the Junior Loan Agreement indicate that Defendant Ladera will be granted "a second priority lien on the" Property. (Junior Loan Agreement at 2.) Under an article titled "CONDITIONS PRECEDENT TO LENDING," Defendant Ladera's lien "must be duly perfected and in a second priority lien position subject only to the deed of trust securing" Plaintiff Hall's lien. (*Id.* at 6.)[12]

21. Fourth, the Intercreditor Agreement states that Defendant Ladera's "Junior Note is secured by (i) that certain second lien Deed of Trust, Security Agreement, Assignment of Rents and Fixture Filing to be recorded in the real property records." (Intercreditor Agreement at 1.) This agreement also included two lists of documents called the "Junior Loan Documents" and the "Senior Loan Documents," and stated that "true, correct and complete copies" of the Senior Loan Documents had been delivered to Ladera and "true, correct and complete copies" of the Senior Loan Documents had been delivered to Hall. (*Id.* at 6.) The documents were not attached to the Intercreditor Agreement; the titles were merely listed. (*Id.* at Exs. B, C.) Among these lists are the Contractor's Agreement, Deeds of Trust, and Junior Loan Agreement. (*Id.*)[13]

ATTORNEYS AND
COUNSELORS AT LAW
Office: (775) 284-8888 Fax: (775) 284-3838
P. O. BOX 62 – RENO, NEVADA 89504
327 CALIFORNIA AVENUE – RENO, NEVADA 89509

VILORIA,
OLIPHANT,
OSTER &
AMAN L.L.P.

---

[10] Order (ECF No. 171, P. 6, L. 14-24)
[11] Order (ECF No. 171, P. 7, L. 1-4)
[12] Order (ECF No. 171, P. 7, L. 5-9)
[13] Order (ECF No. 171, P. 7, L. 10-17)

22. In early 2016, Borrower fell behind on its financial obligations, and Plaintiff Hall declared default.[14]

23. Penta filed certain lawsuits in state court in Nevada and California, including against Hall.

24. Borrower filed for Chapter 11 Bankruptcy on July 28, 2016. The bankruptcy court merged the Nevada state court Penta litigation with the ongoing bankruptcy proceeding.

25. Hall and Ladera filed counterclaims against Penta.

26. Ladera also filed other documents in the bankruptcy proceeding.

27. Ladera filed a Plan of Reorganization and Disclosure Statement both dated March 21, 2017 (ECF Nos. 490 & 491). (HALL010827; HALL010903.)

28. Following the filing of Ladera's Second Amended Plan of Liquidation for New Cal-Neva Lodge, LLC Dated July 5, 2017 (ECF No. 754, filed 8/7/17) and accompanying Disclosure Statement (ECF No. 755) (HALL011455; HALL011532), Hall demanded via a letter dated August 9, 2017, that Ladera withdraw its plain within 24 hours and indicate in writing it would support the Committee Plan (filed by the Official Committee of Unsecured Creditors and Lawrence Investments, Inc.). (HALL012196-99.)

29. Hall's August 9, 2017, letter contended that Ladera's Second Amended Plan of Liquidation for New Cal-Neva Lodge, LLC Dated July 5, 2017 breached the Intercreditor Agreement and demanded that Ladera withdraw its plan and commit in writing to supporting the Committee Plan by August 10, 2017. Such letter set forth the following nonexclusive list of contended breaches of the Intercreditor Agreement by Ladera:

---

[14] Order (ECF No. 171, P. 9, L. 13-14)

ATTORNEYS AND
COUNSELORS AT LAW
Office: (775) 284-8888 Fax: (775) 284-3838
P. O. BOX 62 ~ RENO, NEVADA 89504
327 CALIFORNIA AVENUE ~ RENO, NEVADA 89509

VILORIA,
OLIPHANT,
OSTER &
AMAN L.L.P.

(i) **Intercreditor Agreement, ¶ 13(f) (Ladera is only "entitled" to do two things in connection with an insolvency proceeding: (i) file, prosecute and defend a proof of claim, and (ii) seek non-economic adequate protection order):** Ladera's plan does not fall into either of these categories and, therefore, Ladera is not entitled to pursue a plan.

(ii) **Intercreditor Agreement, ¶ 1(d) (prohibiting Ladera from interfering "in any manner" with Hall's security interests in the Property "unless and until all of the Senior Debt is no longer outstanding"):** Plan proposes eliminating Hall's liens on its collateral and, thus, interferes with Hall's security interests while Senior Debt remains outstanding.

(iii) **Intercreditor Agreement, ¶ 2(c) (prohibiting Ladera from contesting "the validity, perfection, priority or enforceability of any of the Senior Debt, any of the Senior Loan Documents, or any of the liens and security interests of [Hall] in the Property or other collateral securing the Senior Debt):** Plan proposes eliminating and, thus, contests future enforceability of Hall's security interests.

(iv) **Intercreditor Agreement, ¶ 13(h)(i) (prohibiting Ladera from taking any action or voting in any way so as to "contest the legality, validity, or enforceability" of the Intercreditor Agreement or any Senior Loan Document):** Disclosure Statement, § 8, F proposes limiting Ladera's liability for, among other things, taking any action in the "formulation, preparation, dissemination, implementation, Confirmation or consumption of the Plan, Disclosure Statement, or any agreement created or entered into in connection with the Plan or incident to the Case" except for gross negligence or willful misconduct. This provision would neuter Hall's right to sue Ladera for Intercreditor Agreement breaches resulting from Ladera's actions in connection with the bankruptcy, disclosure statement and plan.

(v) **Intercreditor Agreement, ¶ 13(d) (requiring Ladera to support a bankruptcy plan that is more beneficial to and approved by Hall):** Hall has made demand on Ladera to support the Committee Plan.

(vi) **Intercreditor Agreement, ¶ 13(h)(ii) (prohibiting Ladera from proposing a plan that crams Hall's claim down):** Although cram down reference removed from Disclosure Statement, it appears in Plan.

30. Ladera responded to Hall via a letter the next day (August 10, 2017), stating that the Intercreditor Agreement "permits Ladera to support an alternative" plan "that is at least as beneficial to Hall" and explaining why Ladera thought its plan was equally beneficial to Hall or "could be amended to address Hall's treatment, if necessary."  (HALL012201-03.)

31. Ladera noted that it "has the right to defend its secured claim under Paragraph 13(f) of the Intercreditor Agreement and Ladera would need to confirm that any changes to the Lawrence Investments plan [the Committee Plan] would not violate Ladera's rights to its secured claim." (*Id.*)

32. Ladera also stated that it would comply with Hall's request to "withdraw its Plan [the Ladera Plan] at the August 16, 2017 Disclosure Statement hearing on the conditions that (i) the

ATTORNEYS AND
COUNSELORS AT LAW
Office: (775) 284-8888 Fax: (775) 284-3838
P. O. BOX 62 – RENO, NEVADA 89504
327 CALIFORNIA AVENUE – RENO, NEVADA 89509

VILORIA,
OLIPHANT,
OSTER &
AMAN L.L.P.

Lawrence Investment Plan promptly proceeds to confirmation with Hall's support and without any change to Ladera's treatment (as described on Page 4 of the Lawrence Plan), (ii) there will be no side deals or negotiations to distribute the Sales Proceeds currently provided for Ladera under the Lawrence Investments Plan or otherwise out of priority, and (iii) the plan allows for credit bidding on terms approved by the Court." (*Id.*)

33. Ladera did not immediately withdraw its plan as demanded by Hall. Four days later, on August 14, 2017, Hall filed a complaint against Ladera in Nevada state court, along with an *ex parte* application for a temporary restraining order (TRO) and motion for preliminary injunction. (HALL011729; HALL012204.)

34. Two days later the state court granted Hall a TRO on August 16, 2017, ordering Ladera to withdraw its Second Amended Plan and Disclosure Statement and prohibiting Ladera "from supporting and voting for any Bankruptcy plan other than a Bankruptcy plan that Hall approves and deems to be more beneficial to Hall." (HALL013248-54.)

35. On August 22, 2017, Ladera filed a Notice of Removal, removing the state court action to the pending bankruptcy matter as a related adversary case. (HALL013255.)

36. On August 24, 2017, the parties appeared at a hearing in the removed bankruptcy action before the Honorable Gregg W. Zive.

37. On August 25, 2017, the bankruptcy judge (Judge Zive) issued an order terminating the TRO, stating that the TRO "is orally dissolved as of the date and time of the August 24 hearing and is of no force or effect on Ladera." (Case 17-05039-gwz, ECF No. 13.)

38. On September 5, 2017, Hall and Ladera filed a stipulation to extend the deadline for Ladera to respond to Hall's complaint. (Case 17-05039-gwz, ECF No. 14.) Hall and Ladera jointly represented that the "extension is requested to allow the Debtor's scheduled plan confirmation hearing set for September 14, 2017, to proceed and to explore a consensual resolution to the claims asserted in the Complaint prior to pursuing litigation." (*Id.*)

39. On September 28, 2017, Hall filed a notice of voluntary dismissal of its complaint pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i) (made applicable to adversary proceedings by Fed. R. Bankr. P. 7041). (Case 17-05039-gwz, ECF No. 16.)

40. On December 15, 2017, Hall and other parties filed a Joint Motion to Approve Compromise and Settlement Agreement and Dismissal Under FRCP 7041. (Case 16-51282-gwz, ECF No. 1044.)

41. Hall represented in that pleading that "Ladera has already advised that it will not object to the Plan modification or the sale but has not stated its position as to the settlement agreement that is the subject of this motion." (*Id.*)

42. Ladera filed a two-page limited response to the joint motion, explaining that Ladera "was excluded from the settlement negotiations," but nevertheless "has not objected to the sale to Lawrence Investments, has not appealed the Court's confirmation order, has not sought a stay of that order and is disappointed that the sale has been delayed." (HALL011619-20.)

43. Ladera explained, "To expedite the sale to Lawrence Investments, Ladera does not intend to oppose the sale and settlement provided that (1) Ladera's title insurer, Old Republic, does not oppose Hall's proposed settlement and does not request or require that Ladera oppose the settlement, (2) the terms of the settlement are the same as terms recently emailed to Ladera and set forth on Exhibit 1, and (3) Ladera reserves all its legal rights against Hall, Penta and any other party, including but not limited to any affirmative claims and any claims arising from or relating to Ladera's Intercreditor and Subordination Agreement with Hall." *Id.*

44. On December 26, 2017, the bankruptcy court granted the joint motion and approved the settlement, overruling Ladera's objection to the dismissal of its claims against Penta with prejudice. (Case 16-51282-gwz, ECF No. 1074.)

VILORIA, OLIPHANT, OSTER & AMAN L.L.P.

ATTORNEYS AND COUNSELORS AT LAW
Office: (775) 284-8888 Fax: (775) 284-3838
P. O. BOX 62 – RENO, NEVADA 89504
327 CALIFORNIA AVENUE – RENO, NEVADA 89509

45. Hall filed the current lawsuit against Ladera on March 21, 2018.  (ECF No. 1.)[15]

46. This Court granted Ladera's initial motion to dismiss with leave for Hall to amend its complaint (ECF No. 8) because Hall had not established by a preponderance of the evidence the citizenship of the relevant entities sufficient to show complete diversity.  (ECF No. 22, 6/19/18 Order.)

47. On June 21, 2018, Hall filed its Third Amended Complaint (ECF No. 23).  On July 6, 2018, Ladera filed its Answer and Counterclaims (ECF No. 26).

48. The Court denied Hall's motion to dismiss Ladera's counterclaims (ECF No. 29).  (ECF No. 41, 8/27/18 Order.)

49. On November 12, 2018, in response to Ladera's request for production to Hall to "Produce all documents that support your damages in your Complaint," Hall responded, "Hall will interpret 'documents that support your damages' to mean documents that support specific amounts pleaded in the Third Amended Complaint. To the extent that these documents have not already been produced as part of Hall's Rule 26 Pre-Discovery Disclosures, Hall will produce responsive, non-privileged documents supporting the specific monetary damages referenced in the Third Amended Complaint." (11/12/18 Plaintiff/Counter—Defendant Hall CA-NV, LLC's Amended Response to Defendant/Counter-Claimant Ladera Development, LLC's First Set of Requests for Production of Documents.)

50. Discovery closed on September 30, 2020.  (ECF No. 118, 3/18/20 Joint Stipulated Sixth Amended Discovery Plan and Scheduling Order.)

51. Without prejudice to refiling a single motion, the Court granted Ladera's motion to strike the five separate motions for summary judgment originally filed by Hall, on the basis that the motions violated the Court's local rules.  (ECF No. 138, 6/7/21 Order.)

---

[15] Unless proceeded by a different case number, all documents identified solely by an ECF No. refer to documents in the current proceeding, Case 3:18-cv-00124-RCJ-VPC.

ATTORNEYS AND
COUNSELORS AT LAW
Office: (775) 284-8888 Fox: (775) 284-3838
P. O. BOX 62 – RENO, NEVADA 89504
327 CALIFORNIA AVENUE – RENO, NEVADA 89509

VILORIA,
OLIPHANT,
OSTER &
AMAN L.L.P.

52. On June 28, 2021, Hall refiled a single motion for summary judgment (ECF No. 139). On March 29, 2022, the Court entered its first Order granting Hall's request for summary judgment in part and denying it in part. (ECF No. 157). In that Order, the Court found the Intercreditor Agreement to be "valid and enforceable" and granted summary judgment on each contention by Ladera to the contrary. (*Id.*) The Court further determined that Ladera breached the Intercreditor Agreement. (*Id.*) In that Order, the Court denied Hall's summary judgment claim for insurance proceeds. (*Id.*)

53. On July 26, 2022, the Court entered a further Order granting summary judgment in favor of Hall, holding that it is entitled to the proceeds of the insurance policy issued to Ladera pursuant to the Intercreditor Agreement. (ECF No. 171). In that Order, the Court further denied Ladera's motion to reconsider the Court's prior order on summary judgment or for certification for an interlocutory appeal (*Id.*; *see* ECF No. 159, 4/12/2022). The Court further ordered this case to proceed to a bench trial on the issue of damages. (ECF No. 171).

54. Hall served supplemental disclosures on Ladera on September 19, 2022 – days after it had sent an initial draft of its pretrial order.  (9/19/22 Hall CA-NV, LLC's First Supplemental Disclosures Pursuant to FRCP 26(e).)

**(4) A statement of the contested issues of fact in the case as agreed on by the parties**;

The parties agree that whether Hall is entitled to damages – and the amount of those damages – are contested issues of fact.  Ladera contends these are contested issues of law as well.  Furthermore, the parties each maintain there are certain material facts that the other party disputes, as described in the sections below.

**(5) A statement of the contested issues of law in the case as agreed upon by the parties**;

1. Whether Hall has the legal authority to negotiate directly with Old Republic Title Insurance Company on all claims against the Ladera title insurance policy; and, if not, whether Ladera should be ordered to cooperate with Hall in settlement of such claim with

ATTORNEYS AND
COUNSELORS AT LAW
Office: (775) 284-8888 Fax: (775) 284-3838
P. O. BOX 62 – RENO, NEVADA 89504
327 CALIFORNIA AVENUE – RENO, NEVADA 89509

VILORIA,
OLIPHANT,
OSTER &
AMAN L.L.P.

this Court maintaining jurisdiction until such time as the insurance proceeds are settled and disbursed to Hall.

2. Whether Hall is precluded from presenting evidence of its alleged damages for failure to provide a computation of each category of damages as required by Fed. R. Civ. P. 26(a)(1)(iii).

3. Whether Hall is precluded from presenting evidence of its alleged damages for failure to disclose or provide, prior to the close of discovery, the documents (including attorney invoices) "on which each computation is based, including materials bearing on the nature and extent of injuries suffered" as required by Fed R. Civ. P. 26(a)(1)(iii).

4. Whether Hall is entitled to collect as damages in this case attorneys' fees incurred in connection with the bankruptcy proceeding and state court lawsuit removed to the bankruptcy court when Hall never moved for attorneys' fees in those actions.

**(6) Plaintiff's statement of any other issues of fact or law deemed to be material**;

While there are some representations that at least suggest that Penta had not performed any work on the Property, there are other representations to Defendant Ladera explicitly stating that such work occurred. For example, Defendant Ladera is owned and operated by two brothers, Jeffrey and James Pickett. On March 28, 2014, six months before closing, James Pickett received an email from Borrower's representative and forwarded that email to Jeffrey Pickett regarding the preconstruction work, stating, "What they spent the 3m on attached." (ECF No. 139 Ex. 10 ("March 28 Email").) Attached to the email, was a spreadsheet detailing the preconstruction work that was completed, including that Borrower still owed Penta $133,370. (*Id.*) It listed the following construction work that was performed on the property leading up to that date:

ATTORNEYS AND
COUNSELORS AT LAW
Office: (775) 284-8888 Fax: (775) 284-3838
P. O. Box 62 – Reno, Nevada 89504
327 California Avenue – Reno, Nevada 89509

VILORIA,
OLIPHANT,
OSTER &
AMAN L.L.P.

| Construction | |
|---|---|
| Tower Roof Repair & Mansard Re-( | 428,577 |
| Model Room | 85,299 |
| Mobilization & Demolition | |
| Boiler Replacement | 55,965 |
| Tower Abatement | |
| Tree Removal | 10,100 |
| Total | 579,942 |

(*Id.*) In his deposition, James Pickett admits receiving this information from Borrower's representative and forwarding it to his brother, Jeffrey Pickett, but James does not admit to reviewing the attachment. (ECF No. 139 Ex. 6 ("James Pickett Depo") at 215:2–16:11.)[16]

In April 2014, James and Jeffrey Pickett exchanged emails with an individual named Brad Rencher containing an attachment titled "Confidential Offering Memorandum for the Project." (ECF No. 139 Ex. 11 ("Confidential Memo").) They discussed the possibility of extending the mezzanine loan to Borrower. (*Id.* at LAD004398–99.) In the attached memorandum, the preconstruction was listed; "The Property was closed in Sept. 2013 to begin roof repairs, model room, and abatement work in preparation for the full construction start." (*Id.* at LAD004446.) Jeffrey Pickett testified that he is "sure" that he had seen the Confidential Memo. (Jeffrey Pickett Depo at 253:11–54:3.)[17]

In addition to these representations, Penta's Fed. R. Civ. P. 30(b)(6) witness, Mark Briggs, testified that the construction work was "obvious." (ECF No. 139 Ex. 12 ("Briggs Depo") at 51–53.) He stated, "Fences were up. Our trailers were out. I'm not sure how you cannot see that construction was -- that there was activity on the project." (*Id.*) He further affirmed that the

---

[16] Order (ECF No. 171, P. 7, L. 18-24; P. 8, L. 1-11)
[17] Order (ECF No. 171, P. 8, L. 12-19)

ATTORNEYS AND
COUNSELORS AT LAW
Office: (775) 284-8888 Fox: (775) 284-3838
P. O. Box 62 – Reno, Nevada 89504
327 California Avenue – Reno, Nevada 89509

VILORIA,
OLIPHANT,
OSTER &
AMAN L.L.P.

1   "fencing had been out there since 2013 and was there well past September 2014." (*Id.* at 138.) The

2   fencing also had signage, which read, "Construction Zone." (*Id.* at 139.) Both James and Jeffrey

3   Pickett lived in the area and admitted to seeing the Property frequently. (James Pickett Depo at

4   58; Jeffrey Pickett Depo at 50.)[18]

5       James and Jeffrey Pickett both testified that they were not sure when they learned of the

6   preconstruction work on the Property. For example, James Pickett said, in his deposition,

8       Q. Sitting here today, do you recall whether you knew that work had been
          performed before Ladera Development funded a penny?

9       A. No.

10      Q. No, you don't recall?

11      A. I do not recall.

12      Q. Okay. So you could have been told that, and you just don't remember?

13      A. Correct.

15   (James Pickett Depo at 149–50.) Likewise, for example, Jeffrey Pickett testified that he could not

16   recall if he was given access to a "Dropbox," which contained an agreement such as one titled

17   "Preconstruction Services Agreement" between Penta and Borrower. (Jeffrey Pickett Depo at

18   118.)[19]

19      In early 2016, Borrower fell behind on its financial obligations, and Plaintiff Hall declared

20   default. Shortly after this default, Penta filed suit against Plaintiff Hall in Nevada state court,

21   claiming that it had a mechanics' lien with priority over Plaintiff Hall's deed of trust. While this

22   case between Penta and Plaintiff Hall was in the discovery phase, Borrower filed for Chapter 11

23   Bankruptcy on July 28, 2016. The bankruptcy court merged the state court case with the ongoing

24   bankruptcy proceeding. The court then established a $15,000,000 "Lien Litigation Reserve" to

[18] Order (ECF No. 171, P. 8, L. 20-24; P. 9, L. 1-3)

[19] Order (ECF No. 171, P. 9, L. 4-12)

ATTORNEYS AND
COUNSELORS AT LAW
Office: (775) 284-8888 Fax: (775) 284-3838
P. O. Box 62 ~ RENO, NEVADA 89504
327 CALIFORNIA AVENUE ~ RENO, NEVADA 89509

VILORIA,
OLIPHANT,
OSTER &
AMAN L.L.P.

ensure at least partial satisfaction of the liens against the Property. Defendant Ladera litigated against Plaintiff Hall in bankruptcy court to attempt to recover at least partially on its $6,000,000 loan. (*See, e.g.,* ECF No. 140 Ex. A ("Ladera Bankruptcy Plan"); Jeff Pickett Depo at 283:2–284:8). Both Plaintiff Hall and Defendant Ladera also litigated together against Penta arguing the mechanics' lien was junior to the deeds of trust. (*See, e.g.,* ECF No. 140 Ex. H ("Motion for Settlement") at 10 of 31 ("While Hall continues to contest the priority of the liens of PENTA and the Penta Subcontractors and other subcontractors, Hall recognizes that there is significant risk that PENTA will prevail in the priority phase.").)[20]

In the bankruptcy case, Defendant Ladera filed the following disclosure statements and plans:

(i)   Ladera Development, LLC's Plan of Reorganization for Cal Neva Lodge, LLC and New Cal-Neva Lodge, LLC Dated March 21, 2017 [Bank. Dkt. No. 491];

(ii)  Disclosure Statement for Ladera Development, LLC's Plan of Liquidation for New Cal-Neva Lodge, LLC Dated July 5, 2017 [Bank. Dkt. No. 690];

(iii) Ladera Development, LLC's Plan of Liquidation for New Cal-Neva Lodge, LLC Dated July 5, 2017 [Bank. Dkt. No. 689];

(iv)  Amended Disclosure Statement for Ladera Development, LLC's Amended Plan of Liquidation for New Cal-Neva Lodge, LLC Dated July 5, 2017 [Bank. Dkt. No. 737];

(v)   Ladera Development, LLC's Amended Plan of Liquidation for New Cal-Neva Lodge, LLC Dated July 5, 2017 [Bank. Dkt. No. 738];

(vi)  Plan Supplement to Ladera Development, LLC's Amend-ed Plan of Liquidation for New Cal-Neva Lodge, LLC Dated July 5, 2017 [Bank. Dkt. No. 740];

(vii) Ladera Development, LLC's Second Amended Plan of Liquidation for New Cal-Neva Lodge, LLC Dated July 5, 2017 [Bank. Dkt. No. 754]; and,

(viii) Second Amended Disclosure Statement for Ladera Development, LLC's Second Amended Plan of Liquidation for New Cal-Neva Lodge, LLC Dated July 5, 2017 [Bank. Dkt. No. 755].

---

[20] Order (ECF No. 171, P. 9, L. 13-24; P. 10, L. 1-2)

ATTORNEYS AND
COUNSELORS AT LAW
Office: (775) 284-8888 Fax: (775) 284-3838
P. O. Box 62 – Reno, Nevada 89504
327 California Avenue – Reno, Nevada 89509

VILORIA,
OLIPHANT,
OSTER &
AMAN L.L.P.

The foregoing filings by Defendant Ladera compelled Plaintiff Hall to file the following responsive pleadings:

(i)     Objection to Disclosure Statement for Ladera Development, LLC's Plan of Reorganization for Cal Neva Lodge, LLC and New Cal-Neva Lodge, LLC Dated March 31, 2017 [Bank. Dkt. No. 521];

(ii)    Supplemental Objection to Disclosure Statement for Lad-era Development, LLC's Plan of Reorganization for Cal Neva Lodge, LLC and New Cal-Neva Lodge, LLC Dated March 31, 2017 [Bank. Dkt. No. 635];

(iii)   Objection to Disclosure Statement for Ladera Development, LLC's Plan of Liquidation for Cal-Neva Lodge, LLC Dated July 5, 2017 [Bank. Dkt. No. 713]; and,

(iv)    Objection to Second Amended Disclosure Statement for Ladera Development, LLC's Second Amended Plan of Liquidation for Cal-Neva Lodge, LLC Dated July 5, 2017 [Bank. Dkt. No. 779].

Defendant Ladera's filed disclosure statement [Bank. Dkt. No. 755] and plan of liquidation [Bank. Dkt. No. 754] violated Plaintiff Hall's rights and Defendant Ladera's obligations under the Intercreditor Agreement such that it prompted Hall to seek an injunction of the same. For example, despite the Intercreditor Agreement's explicit requirements, the Ladera Plan (i) proposed not paying Plaintiff Hall in full, (ii) explicitly stated that it was a cram down plan, and (iii) sought to limit Defendant Ladera's liability to Plaintiff Hall under the Intercreditor Agreement. As a result of Defendant Ladera's wrongful acts, Plaintiff Hall was required to retain counsel and file a suit in the County of Washoe to enforce its rights. In *Hall CA-NV, LLC v. Ladera Development, LLC*, Case No. CV-17-01526 in the Second Judicial District Court of the State of Nevada, Hall sought and obtained an injunction from the Nevada state court against Ladera whereupon Ladera withdrew its plan. Hall was damaged by the cost of the legal fees it incurred to obtain the withdrawal of the wrongfully filed plan.

Penta, Plaintiff Hall, Defendant Ladera, and various subcontractors entered into negotiations on the best way to split the $15,000,000 pot. But shortly into these negotiations, the parties were able to exclude Defendant Ladera from participating based upon the Intercreditor

VILORIA, OLIPHANT, OSTER & AMAN L.L.P.

ATTORNEYS AND COUNSELORS AT LAW
Office: (775) 284-8888 Fax: (775) 284-3838
P. O. Box 62 – RENO, NEVADA 89504
327 CALIFORNIA AVENUE – RENO, NEVADA 89509

Agreement. The remaining parties to the negotiations agreed to a split of the money divvied up between Plaintiff Hall and the various contractors, and they moved the bankruptcy court for approval of the settlement. In the Motion for Settlement, Plaintiff Hall represented that it would "exercise its rights under the Intercreditor Agreement with Ladera to insure Ladera's nonobjection to the motion to approve this Agreement and the Motion to Dismiss, including but not limited to taking any action to enforce the Intercreditor Agreement, in the event Ladera breaches the terms of the Intercreditor Agreement." (*Id.* at 17 of 31.) Defendant Ladera did not contest the validity and enforceability of the Intercreditor Agreement at that time or at all during the bankruptcy proceedings. The bankruptcy court approved the proposed settlement.[21]

Defendant Ladera did however file its Limited Response to Joint Motion to Approve Compromise and Settlement Agreement and Dismissal Under FRCP 7041 [Bank. Dkt. No. 1068], which was an objection to the Motion for Settlement and ultimately overruled.

The Intercreditor Agreement between the parties is a valid and enforceable contract.[22] The Intercreditor Agreement imposed a number of restrictions on Defendant Ladera from interfering with Plaintiff Hall in the collection of its debt with Borrower. Despite these obligations, it is not contested that Defendant Ladera submitted a proposed plan in the bankruptcy proceeding that would have allowed for Defendant Ladera to receive some of the funds that would have otherwise gone to satisfy Plaintiff Hall's debt. This proposal by Defendant Ladera, as well as this instant proceeding in which Defendant Ladera contests the Intercreditor Agreement's validity, violate Defendant Ladera's following duties: (1) to not interfere in any manner with Plaintiff's ability to collect its debt from Borrower, (Intercreditor Agreement at 4), (2) to not "contest the validity, perfection, priority or enforceability" of Plaintiff Hall's senior debt, (id. at 5), (3) to not "bringing

---

[21] Order (ECF No. 171, P. 9, L. 3-14)
[22] Order (ECF No. 153, P. 19, L. 10)

ATTORNEYS AND
COUNSELORS AT LAW
Office: (775) 284-8888 Fax: (775) 284-3838
P. O. BOX 62 – RENO, NEVADA 89504
327 CALIFORNIA AVENUE – RENO, NEVADA 89509

VILORIA,
OLIPHANT,
OSTER &
AMAN L.L.P.

or consenting to any Insolvency Proceeding unless Senior Lender also joins therein or consents thereto in writing," (id. at 11), and (4) to not "contest the legality, validity or enforceability of" the Intercreditor Agreement. Defendant Ladera does not dispute that these actions constitute violations of the Intercreditor Agreement.[23] Therefore, Defendant Ladera is liable for breach of contract for contesting Plaintiff Hall's superior loan status in the Bankruptcy Court[24] – resulting in the state court injunction lawsuit by Plaintiff Hall – for contesting the Intercreditor Agreement through this instant lawsuit.

The Ladera Insurance Policy is undoubtedly a payment "made on account of the Junior Debt or otherwise to or for the benefit of the holder of Junior Debt," so it cannot be paid towards Defendant Ladera as the Junior Debt holder but must rather be paid towards Plaintiff Hall as the Senior Debt holder.[25] Plaintiff Hall is entitled to the insurance proceeds because as of September 9, 2019, Plaintiff Hall was still owed $8,610,279.02 based on the Construction Loan Agreement with the Borrower, with interest continuing to accrue.  The $8,610,279.02 owed pursuant to the Construction Loan Agreement with the Borrower is not the amount of damages being sought in this litigation.  The damages being sought by Hall are the maximum amount of Ladera's Insurance Policy which could be applied toward the $8,610,279.02 outstanding debt plus Hall's attorney's fees and costs.

Plaintiff Hall was forced by the actions of Defendant Ladera to hire legal counsel originally of Fahrendorf, Viloria, Oliphant & Oster, LLP and Coats Rose to represent it in the bankruptcy, and subsequently the state court case, and this instant lawsuit. Such counsel from the former law firm continued in representation through the successor firm of Viloria, Oliphant, Oster & Aman, LLP in January 2019. Such lead counsel – Frank J. Wright – continued in representation in May

---

[23] Order (ECF No. 153, P. 20, L. 1-13)
[24] Order (ECF No. 171, P. 2, L. 16-18)
[25] Order (ECF No. 171, P. 16, L. 11-14)

ATTORNEYS AND
COUNSELORS AT LAW
Office: (775) 284-8888 Fax: (775) 284-3838
P. O. Box 62 – Reno, Nevada 89504
327 California Avenue – Reno, Nevada 89509

VILORIA,
OLIPHANT,
OSTER &
AMAN L.L.P.

ATTORNEYS AND
COUNSELORS AT LAW
Office: (775) 284-8888 Fax: (775) 284-3838
P. O. Box 62 – Reno, Nevada 89504
327 California Avenue – Reno, Nevada 89509

VILORIA,
OLIPHANT,
OSTER &
AMAN L.L.P.

2017 at Gardere Wynne Sewell, LLP, in March 2018 at Foley Lardner, LLP, and in July 2020 at the Law Offices of Frank J. Wright, PLLC.

In accordance this Court's prior ruling that Defendant Ladera breached the Intercreditor Agreement by this lawsuit[26] and with the subsequent Order that, "[t]his Court has held that Plaintiff Hall has successfully shown Defendant Ladera is liable for breach of contract for contesting Plaintiff's Hall's superior loan status in the Bankruptcy Court."[27] "Plaintiff Hall's damages for this breach remain unresolved" and "as these damages are 'an element of damages under a contract,' they need to go to trail even though the damages are for attorney fees and litigation costs."[28] On such basis, this Court ordered this case to "proceed to a bench trial on the issue of damages."[29] Plaintiff Hall seeks recovery of attorneys' fees and expenses both as elements of damages and as the prevailing party in this action under the orders of this Court existing.

Where an award is contemplated for fee-shifting to a prevailing party under contract, Texas employs a lodestar method – first, determining the reasonable hours spent by counsel in the case and a reasonable hourly rate for such work and multiplying the number of such hours by the applicable rate to generate a base fee or lodestar, and second, making adjustments up or down if relevant factors indicate an adjustment is necessary to reach a reasonable fee in the case. *See Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 494 (Tex. 2019) (quoting *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757 (Tex. 2012)).

In this instant lawsuit on June 15, 2018, Plaintiff Hall served its <u>Plaintiff's Rule 26(a) Pre-Discovery Disclosure of Witnesses and Documents</u> on Defendant Ladera therein identifying Frank J. Wright and Nathan Aman, each counsel to Plaintiff Hall, as witnesses on the fees incurred by Plaintiff Hall. Both Mr. Wright and Mr. Aman were timely disclosed and are competent to

---

[26] ECF No. 157, P. 20, L. 1-14
[27] Order (ECF No. 171, P. 2, L. 16-18).
[28] Order (ECF No. 171, P. 2, L. 18-24).
[29] Order (ECF No. 171, P. 2, L. 24; P. 3, L. 1-2).

testify on the matters required by and in support of the lodestar calculation. Mr. Wright was also disclosed as an expert witness and the parties entered into a stipulation that avoided the need for his deposition by agreeing that his testimony would be limited to the issue of attorneys' fees. Both Mr. Wright and Mr. Aman can testify as to the nature of the work performed, the novelty and difficulty of the legal questions involved, the skill required to perform the legal services properly, who performed such legal services, their respective rates, the fee customarily charged in the localities for similar legal services, approximately when the services were performed, the number of hours actually worked, and the experience, reputation, and ability of the lawyers involved. In support of such testimony, on September 19, 2022, Plaintiff Hall disclosed in its <u>First Supplemental Disclosures Pursuant to FRCP 26(e)</u> to Defendant Ladera the legal invoices that Plaintiff Hall incurred in these cases and seeks to recover upon. The majority of legal invoices are from the current litigation and thereby could not be produced during the discovery period, and the bankruptcy invoices were redacted for privilege and to include narrowly tailored invoices related to Ladera's filing of its plan in the bankruptcy action.  The invoices merely support the testimony to be provided by Mr. Wright and Mr. Aman as to attorney's fees and costs incurred in this litigation and limited entries from the bankruptcy action. Mr. Wright and Mr. Aman are the persons most knowledgeable about the necessity and reasonableness of Plaintiff Hall's legal actions during the bankruptcy and state court proceedings, as they were counsel of record in those cases. Defendant Ladera suffers no prejudice from Plaintiff Hall's reliance on these invoices in support of Mr. Wright and Mr. Aman's testimony.

Plaintiff Hall seeks damages of no less than $1,503,801.15 of attorneys' fees and expenses incurred by it in the bankruptcy case, state court case, and this instant lawsuit through August 31, 2022; additional legal fees and expenses continue to be incurred by Plaintiff Hall in pursuit of this instant lawsuit, which Plaintiff Hall intends to add to this claim up to the time of trial. The below tables provide overall summary of the stated damages sought through August 31, 2022:

| FIRM LEVEL BANKRUPTCY / STATE COURT TOTALS | | |
|---|---|---|
| FIRM | INVOICED FEES | INVOICED EXPENSES |
| Coats Rose | $ 780.00 | $ - |
| Gardere Wynne Sewell LLP | $ 146,886.50 | $ 205.91 |
| Fahrendorf, Viloria, Oliphant & Oster, LLP | $ 38,801.50 | $ - |
| TOTALS | $ 186,468.00 | $ 205.91 |

| FIRM LEVEL CURRENT CASE TOTALS | | |
|---|---|---|
| FIRM | INVOICED FEES | INVOICED EXPENSES |
| Foley & Lardner LLP | $ 622,963.50 | $ 94,087.73 |
| Law Offices of Frank J. Wright, PLLC | $ 121,620.00 | $ 2,233.34 |
| Fahrendorf, Viloria, Oliphant & Oster LLP | $ 81,250.00 | $ 1,671.65 |
| Viloria, Oliphant, Oster & Aman LLP | $ 385,624.40 | $ 7,676.62 |
| TOTALS | $ 1,211,457.90 | $ 105,669.34 |

| OVERALL TOTALS | |
|---|---|
| INVOICED FEES | INVOICED EXPENSES |
| $ 1,397,925.90 | $ 105,875.25 |

Plaintiff Hall contests the purported facts and positions laid out by Defendant Ladera hereinbelow.

**(7) Defendant's statement of any other issues of fact or law deemed to be material;**

***Ladera Did Not Know Penta Had Performed Pre-Construction Work, But Hall Did***

Ladera contests the purported facts and positions laid out by Hall above.  In particular, Ladera reiterates the points in its prior briefing (*see* ECF Nos. 145, 159, 162, 170-1) that Ladera relied on the express contractual representations that no prior work of any kind had been performed on the property – representations that Hall included but knew were false.  Neither fencing (which Jeff Pickett testified he believed was security fencing) nor anything in the spreadsheet Hall references put Ladera on notice that Penta had performed pre-loan construction work that would result in a priority lien.  The spreadsheet listed the construction work allegedly giving rise to Penta's lien in a completely different section than the single line item for "Penta-Pre-Construction" under "Design, Engineering and Permitting."  (ECF No. 139-11.)  The costs for the construction work did not match the figure for "Penta-Pre-Construction," and witness

Attorneys and
Counselors at Law
Office: (775) 284-8888 Fax: (775) 284-3838
P. O. Box 62 – Reno, Nevada 89504
327 California Avenue – Reno, Nevada 89509

VILORIA,
OLIPHANT,
OSTER &
AMAN L.L.P.

testimony confirmed there was nothing on the spreadsheet itself that would have alerted Ladera to the fact that Penta had performed any of the lien-causing construction work at issue.  (ECF No. 145-1, Brandyn Iverson Depo at 140:22-141:16.)

Ladera maintains that the contractual language itself relieved Ladera of any duty to independently investigate the representations being made to Ladera – and that Ladera justifiably relied on the false representations to its detriment.

**Ladera Was Entitled to Defend Its Interests in the Bankruptcy Proceedings, and Hall Is Not Entitled to Attorneys' Fees Stemming from Those Proceedings**

Ladera contends that it was entitled to have representation and defend its interests in the bankruptcy proceedings.  As this Court already acknowledged, "You cannot assert a damage for somebody standing up and appearing on their own behalf."  (June 6, 2022 Hr'g Tr. at 29-30; *see also id.* at 21-22 ("They [Ladera] had every right to defend their position in the bankruptcy court. For various reasons, they got excluded…. I'm certainly not going to give you all of your fees every time you had to stand up and oppose them.  They had the right to appear.  Even if you had their mandatory consent to your resolution of settlement, they certainly had the right to stand up without incurring damage fees to you.  There's a causation issue, right?  MR. WRIGHT [Hall's counsel]: I would agree with that.  Right.").)

Ladera contends that Hall's state court action against Ladera that Ladera removed to the bankruptcy court as a related adversary proceeding was totally unnecessary.  Ladera was cooperating with Hall and indicated its willingness to further revise the plan it was proposing if Hall deemed that necessary.  But instead of working with Ladera, Hall turned around and filed a state court lawsuit against Ladera.  Hall sought and obtained an *ex parte* temporary restraining order against Ladera, only to have the federal bankruptcy judge dissolve the TRO.  Hall ended up voluntarily withdrawing its complaint against Ladera.  It should not now be able to collect attorneys' fees for its aggressive actions that were completely unnecessary.

ATTORNEYS AND
COUNSELORS AT LAW
Office: (775) 284-8888 Fax: (775) 284-3838
P. O. Box 62 – Reno, Nevada 89504
327 California Avenue – Reno, Nevada 89509

VILORIA,
OLIPHANT,
OSTER &
AMAN L.L.P.

Moreover, had Hall wanted to collect its attorneys' fees from Ladera for its state court action that became a related adversarial proceeding, it should have filed a motion for attorneys' fees *in that action.*  *See* Fed. R. Bankr. P. 7054 (incorporating Fed. R. Civ. P. 54(d)(2)(A)-(C) in adversary proceedings); Fed. R. Civ. P. 54(d)(2)(A) ("A claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages.").

The Intercreditor Agreement provides:

> If any lawsuit, reference, arbitration or, other proceeding is commenced which arises out of, or which relates to this Agreement, including any alleged tort action, the prevailing party shall be entitled to recover from each other party **such sums as the court or other party presiding over such action or proceeding may adjudge to be reasonable attorneys' fees and costs in the action or proceeding**, including the allocated costs for services of in-house counsel, in addition to costs and expenses otherwise allowed by law. Any such attorneys' fees and costs incurred by any party in enforcing a judgment in its favor under this Agreement shall be recoverable separately from and in addition to any other amount included in such judgment and shall survive and not be merged into any such judgment. The obligation to pay such attorneys' fees and costs is intended to be severable from the other provisions of this Agreement.

(Intercreditor Agreement § 18 (emphasis added).)  Judge Zive was familiar with the parties and their arguments, and he was in the best position to determine if Ladera should be responsible for Hall's attorneys' fees.  Since the bankruptcy court was the court "presiding over such action or proceeding," it was that court which had to determine what attorneys' fees were reasonable.  Of course, Hall voluntarily dismissed its complaint against Ladera, so it was not a prevailing party entitled to attorneys' fees.  *See Makekau v. State*, 943 F.3d 1200, 1205 (9th Cir. 2019) ("a voluntary dismissal without prejudice … [is] 'the opposite' of an adjudication on the merits" and thus "Plaintiffs are not prevailing parties" entitled to attorneys' fees).  Hall should not now be able to try to collect the attorneys' fees it could have, and should have, moved for in the bankruptcy proceedings.

**Hall Is Precluded from Presenting Evidence of Its Alleged Damages for Failure to Comply with Fed. R. Civ. P. 26(a)(1)(A)(iii)**

ATTORNEYS AND
COUNSELORS AT LAW
Office: (775) 284-8888 Fax: (775) 284-3838
P. O. Box 62 – Reno, Nevada 89504
327 California Avenue – Reno, Nevada 89509

VILORIA,
OLIPHANT,
OSTER &
AMAN L.L.P.

Federal Rule of Civil Procedure 26(a) mandates that "a party **must**, without awaiting a discovery request, provide to the other parties… (iii) a computation of each category of damages claimed by the disclosing party – who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered[.]" Fed. R. Civ. P. 26(a).  Hall never did so.

Hall first disclosed the documents in intends to rely on at trial with its First Supplemental Disclosures dated September 19, 2022 – nearly two years after discovery closed and nearly four years after it stated it would produce all documents supporting its damages.  Hall should have had all the relevant attorneys' fees invoices related to the bankruptcy proceedings in its possession well before it filed this current action in March 2018.  Yet Hall did not provide *any* of these invoices during discovery.  And Hall *still* has not provided a computation of each category of damages.  "While a party may not have all of the information necessary to provide a computation of damages early in the case, it has a duty to diligently obtain the necessary information and prepare and provide its damages computation within the discovery period." *Jackson v. United Artists Theatre Cir., Inc.*, 278 F.R.D. 586, 593 (D. Nev. 2011).  "The plaintiff cannot shift to the defendant the burden of attempting to determine the amount of the plaintiff's alleged damages." *Id.*

Ladera still is uncertain if Hall is claiming the total amount of attorneys' fees from the invoice entries it provided to Ladera *after* the parties exchanged drafts of the pretrial order.  For example, in the bankruptcy-related attorneys' fees invoices Hall recently disclosed to Ladera, there are mixed entries such as "Review Plans filed by Debtor and Ladera."  (*E.g.*, HALL013289.)  Ladera should not be forced to pay Halls' attorneys' fees for reviewing plans filed by other parties.  But Hall has not proposed any way to divide the time and fees related to such entries.

Hall *still* has not provided a computation of what it is purportedly owed under the Senior Loan.  To the extent Hall is entitled to any of Ladera's title insurance proceeds, those proceeds

ATTORNEYS AND
COUNSELORS AT LAW
Office: (775) 284-8888 Fax: (775) 284-3838
P. O. BOX 62 – RENO, NEVADA 89504
327 CALIFORNIA AVENUE – RENO, NEVADA 89509

VILORIA,
OLIPHANT,
OSTER &
AMAN L.L.P.

can only be used to make Hall whole with regard to the Senior Loan (not to pay Hall's attorneys' fees related to Ladera).  But Hall has not provided such a computation or supporting documents.[30]

Because Hall has failed to comply with its basic disclosure obligations under Fed. R. Civ. P. 26, evidence of its damages should be excluded under Fed. R. Civ. P. 37(c).  *See Hoffman v. Constr. Protective Servs., Inc.,* 541 F.3d 1175, 1180 (9th Cir. 2008) (affirming preclusion of undisclosed evidence of damages and explaining that "Rule 37(c)(1) gives teeth to these [disclosure] requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed," even "when a litigant's entire cause of action … [will be] precluded") (quotation marks and citations omitted).

**Attorneys' Fees in this Case Are Premature and Contrary to Fed. R. Civ. P. 54(d)(2)(A)**

Hall has recently disclosed certain attorneys' fees invoices for the current litigation.  But this case is not over, and it is premature to consider what amount of attorneys' fees (if any) Hall is entitled to in this case.  This Court has not yet entered a final judgment or judicially determined that Hall is the prevailing party.

Moreover, Hall trying to present evidence of its attorneys' fees incurred in this case at trial is contrary to Fed. R. Civ. P. 54(d)(2)(A), which provides that a "claim for attorney's fees and related nontaxable expenses ***must be made by motion*** unless the substantive law requires those fees to be proved at trial as an element of damages."  Fed. R. Civ. P. 54(d)(2)(A) (emphasis added). The Intercreditor Agreement provides for attorneys' fees for this case only if Hall is determined

---

[30] On the afternoon of October 11, 2022 – the day this pretrial order was due – Hall sent, for the first time, a "summary" of its legal invoices with purported totals it was seeking in attorneys' fees.  However, there is no explanation of how these amounts were computed or whether they include ALL entries from this case and the bankruptcy invoice entries provided (even though several of the entries include time directed at other parties' filings and/or unsuccessful tasks).  After numerous exchanges of the draft pretrial order, Hall also inserted – for the first time in the draft of the pretrial order sent to Ladera's counsel at 4:30pm on October 11, 2022 – the specific amount of $8,610,279.02 that it claimed it is still due on the loan.  However, Hall has not provided any computation or explanation of how it came up with this amount, much less documentation to substantiate it.

ATTORNEYS AND
COUNSELORS AT LAW
Office: (775) 284-8888 Fax: (775) 284-3838
P. O. BOX 62 – RENO, NEVADA 89504
327 CALIFORNIA AVENUE – RENO, NEVADA 89509

VILORIA,
OLIPHANT,
OSTER &
AMAN L.L.P.

to be the prevailing party – and only those amounts that this Court adjudges to be reasonable. Moreover, Hall must "state the amount sought or provide a fair estimate of it," Fed. R. Civ. P. 54(d)(2)(B)(iii) – which Hall has not yet done. If and when Hall moves for attorneys' fees in this case, Ladera must be provided with an opportunity to respond on the merits and point out the numerous time entries that are duplicative, excessive, and otherwise unreasonable.

***If Any Attorneys' Fees Are Allowed, Ladera Should Have an Opportunity to Brief the Unreasonableness of Specific Entries***

Hall should not be permitted to recover attorneys' fees related to the bankruptcy proceedings for the reasons described above – (1) Hall did not move for attorney's fees in the bankruptcy action, and (2) Hall did not disclose prior to discovery either a computation of its alleged damages or the invoices on which those damages are allegedly based. And for the reasons described above, any claimed attorneys' fees for the current action are premature.

The untimely disclosure of the invoices on which Hall relies has greatly prejudiced Ladera. If Hall had timely disclosed the bankruptcy-related invoices, for example, Ladera could have questioned witnesses about the necessity and reasonableness of the parties' actions during the bankruptcy proceedings.

However, if this Court does allow evidence of Hall's attorneys' fees – related to the bankruptcy proceedings or the current action – Ladera requests the opportunity to submit briefing to substantively challenge specific entries. Throughout the bankruptcy-related invoices and the invoices for the current action, there are numerous entries for tasks and fees that Hall should not be permitted to recover from Ladera. For example (and this is just a small sampling):

- There are numerous entries in the bankruptcy invoices for mixed tasks, such as "Review and revise objections to Penta and Ladera Plans" or "Revise and edit the draft disclosure

ATTORNEYS AND
COUNSELORS AT LAW
Office: (775) 284-8888 Fax: (775) 284-3838
P. O. BOX 62 – RENO, NEVADA 89504
327 CALIFORNIA AVENUE – RENO, NEVADA 89509

VILORIA,
OLIPHANT,
OSTER &
AMAN L.L.P.

statement[31] objection and the motion to shorten discovery deadlines and discuss same; review draft subpoenas and discuss proposed disclosure statement discovery; review various additional pleadings including the Ladera omnibus reply and discuss same." (HALL013317-19.)  Obviously, fees for reviewing other parties' filings or working on tasks unrelated to Ladera should not be charged to Ladera.

- There are several duplicative tasks in both the bankruptcy invoices and the invoices for the current action, including multiple attorneys billing for the same task or conference. Hall may have chosen to pay for such duplicative billing, but it is unreasonable to charge such amounts to Ladera.

- There are several unreasonable and excessive entries and rates, including attorneys billing $700 per hour and attorneys billing for travel time.  (*E.g.*, HALL013319 (Frank Wright charging for 7 hours of "Travel to Reno, NV for hearings on July 25, 2017").)  Not only should Ladera should not be responsible for travel time – this is not attorney work; but also Mr. Wright would have had to travel for bankruptcy hearings involving other parties and their disclosure statement hearings regardless of what Ladera did or did not file.  This is an example of the "causation" issues previously noted by this Court.  Ladera did not cause Hall to incur these fees, and Hall should not be able to recover such fees as claimed damages against Ladera.

- There are numerous entries for multiple attorneys getting up to speed on the case, reviewing background materials, or reviewing the Intercreditor Agreement.  Ladera should not be charged with such repetitive and duplicitous fees.

---

[31] It is unclear whose draft disclosure statement is at issue, but from the surrounding entries, it seems probable that it is Penta's disclosure statement.

ATTORNEYS AND
COUNSELORS AT LAW
Office: (775) 284-8888 Fax: (775) 284-3838
P. O. BOX 62 – RENO, NEVADA 89504
327 CALIFORNIA AVENUE – RENO, NEVADA 89509

VILORIA,
OLIPHANT,
OSTER &
AMAN L.L.P.

- For the entries on the current case, there are numerous entries for *unsuccessful* tasks, such as opposing Ladera's motion to dismiss (which was granted) or for drafting five summary judgment motions that were stricken and which Hall then had to rewrite and consolidate into one motion. Ladera should not have to pay for Hall's strategic errors and unsuccessful positions.

If this Court allows any evidence of attorneys' fees (which it should not), Ladera requests an opportunity to brief all the instances of unreasonable time entries and fees for which Ladera should not be responsible.

**(8) Lists or schedules of all exhibits that will be offered in evidence by the parties at the trial. The lists or schedules must describe the exhibits sufficiently for ready identification and:**

**(A) Identify the exhibits the parties agree can be admitted at trial; and**

| LADERA EXHIBIT NO. | DESCRIPTION | BATES-RANGE OR ECF NO. |
|---|---|---|
| Ladera 1 | Intercreditor Agreement | HALL01045 |
| Ladera 2 | Order Terminating Temporary Restraining Order, 8/25/17 | Case 17-05039-gwz, ECF No. 13 |
| Ladera 3 | Stipulation to Extend Deadline to File Response or Answer to Complaint, 9/5/17 | Case 17-05039-gwz, ECF No. 14 |
| Ladera 4 | Hall's Notice of Voluntary Dismissal, 9/28/17 | Case 17-05039-gwz, ECF No. 16 |
| Ladera 5 | Joint Motion to Approve Compromise and Settlement Agreement and Dismissal Under FRCP 7041, 12/15/17 | Case 16-51282-gwz, ECF No. 1044 |
| Ladera 6 | Order Granting Joint Motion to Approve Compromise and Settlement Agreement and Dismissal Under FRBP 7041 | Case 16-51282-gwz, ECF No. 1074 |
| Ladera 7 | 11/12/18 Plaintiff/Counter—Defendant Hall CA-NV, LLC's Amended Response to Defendant/Counter-Claimant Ladera Development, LLC's First Set of Requests for Production of Documents | N/A |
| Ladera 8 | 1/30/19 Plaintiff/Counter—Defendant Hall CA-NV, LLC's Response to Defendant/Counter-Claimant Ladera Development, LLC's First Set of Interrogatories | N/A |
| Ladera 9 | 6/15/18 Plaintiff's Rule 26(a) Pre-Discovery Disclosures of Witnesses and Documents | N/A |
| Ladera 10 | 9/19/22 Hall CA-NV, LLC's First Supplemental Disclosures Pursuant to FRCP 26(e) | N/A |

ATTORNEYS AND COUNSELORS AT LAW
Office: (775) 284-8888 Fax: (775) 284-3838
P. O. BOX 62 – RENO, NEVADA 89504
327 CALIFORNIA AVENUE – RENO, NEVADA 89509

VILORIA, OLIPHANT, OSTER & AMAN L.L.P.

| Ladera 11 | Email Chain "RE: New-Cal Neva Lodge, LLC 16051282-GWZ," 12/08/17 | HALL_000178 |
| Ladera 12 | Email Chain "RE: Global Term Sheet," 11/28/17-12/04/17 | HALL_000435 |
| Ladera 13 | Email Chain "RE: Motion dismiss- Adversary," 12/22/17-12/23/17 | HALL_000252 |
| Ladera 14 | Transcript of 8/24/17 Bankruptcy Hearing | N/A |

**(B)** **List those exhibits to which objection is made and state the grounds for the objection. Stipulations on admissibility, authenticity, and/or identification of documents should be made whenever possible**;

| HALL EXHIBIT NO. | DESCRIPTION | BATES-RANGE |
|---|---|---|
| Hall 1 | Disclosure Statement for Ladera Development, LLC's Plan of Liquidation for New Cal-Neva Lodge, LLC Dated March 21, 2017 [Bank. Dkt. No. 490] | HALL010818-HALL010895 |
| Hall 2 | Ladera Development, LLC's Plan of Reorganization for Cal Neva Lodge, LLC and New Cal-Neva Lodge, LLC Dated March 21, 2017 [Bank. Dkt. No. 491] | HALL010896-HALL010960 |
| Hall 3 | Disclosure Statement for Ladera Development, LLC's Plan of Liquidation for New Cal-Neva Lodge, LLC Dated July 5, 2017 [Bank. Dkt. No. 690] | HALL010961-HALL011095 |
| Hall 4 | Ladera Development, LLC's Plan of Liquidation for New Cal-Neva Lodge, LLC Dated July 5, 2017 [Bank. Dkt. No. 689] | HALL011096-HALL011180 |
| Hall 5 | Amended Disclosure Statement for Ladera Development, LLC's Amended Plan of Liquidation for New Cal-Neva Lodge, LLC Dated July 5, 2017 [Bank. Dkt. No. 737] | HALL011181-HALL011265 |
| Hall 6 | Ladera Development, LLC's Amended Plan of Liquidation for New Cal-Neva Lodge, LLC Dated July 5, 2017 [Bank. Dkt. No. 738] | HALL011266-HALL011401 |
| Hall 7 | Plan Supplement to Ladera Development, LLC's Amended Plan of Liquidation for New Cal-Neva Lodge, LLC Dated July 5, 2017 [Bank. Dkt. No. 740] | HALL011402-HALL011454 |
| Hall 8 | Ladera Development, LLC's Second Amended Plan of Liquidation for New Cal-Neva Lodge, LLC Dated July 5, 2017 [Bank. Dkt. No. 754] | HALL011455-HALL011531 |
| Hall 9 | Second Amended Disclosure Statement for Ladera Development, LLC's Second Amended Plan of Liquidation for New Cal-Neva Lodge, LLC Dated July 5, 2017 [Bank. Dkt. No. 755] | HALL011532-HALL011618 |
| Hall 10 | Ladera Development, LLC's Limited Response to Joint Motion to Approve Compromise and Settlement Agreement and Dismissal Under FRCP 7041 [Bank. Dkt. No. 1068] | HALL011619-HALL011620 |

ATTORNEYS AND COUNSELORS AT LAW
Office: (775) 284-8888 Fax: (775) 284-3838
P. O. BOX 62 ~ RENO, NEVADA 89504
327 CALIFORNIA AVENUE ~ RENO, NEVADA 89509

VILORIA, OLIPHANT, OSTER & AMAN L.L.P.

| | | |
|---|---|---|
| Hall 11 | Objection to Disclosure Statement for Ladera Development, LLC's Plan of Reorganization for Cal Neva Lodge, LLC and New Cal-Neva Lodge, LLC Dated March 31, 2017 [Bank. Dkt. No. 521] | HALL011621-HALL011625 |
| Hall 12 | Supplemental Objection to Disclosure Statement for Ladera Development, LLC's Plan of Reorganization for Cal Neva Lodge, LLC and New Cal-Neva Lodge, LLC Dated March 31, 2017 [Bank. Dkt. No. 635] | HALL011626-HALL011632 |
| Hall 13 | Objection to Disclosure Statement for Ladera Development, LLC's Plan of Liquidation for Cal-Neva Lodge, LLC Dated July 5, 2017 [Bank. Dkt. No. 713] | HALL011633-HALL011680 |
| Hall 14 | Objection to Second Amended Disclosure Statement for Ladera Development, LLC's Second Amended Plan of Liquidation for Cal-Neva Lodge, LLC Dated July 5, 2017 [Bank. Dkt. No. 779] | HALL011681-HALL011728 |
| Hall 15 | Hall CA-NV, LLC's Ex Parte Application for Temporary Restraining Order and Motion for Preliminary Injunction | HALL011729-HALL012203 |
| Hall 16 | Hall CA-NV, LLC's Original Complaint | HALL012204-HALL012673 |
| Hall 17 | Declaration of Michael J. Jaynes | HALL012674-HALL012818 |
| Hall 18 | Declaration of Frank J. Wright | HALL012819-HALL013247 |
| Hall 19 | Temporary Restraining Order and Order Setting Preliminary Injunction Hearing | HALL013248-HALL013254 |
| Hall 20 | Notice of Removal to Federal Court | HALL013255-HALL013263 |
| Hall 21 | August 11, 2022, Letter From Hall CA-NV, LLC Counsel to Old Republic | HALL013264-HALL013283 |
| Hall 22 | August 18, 2022, Response Letter From Counsel for Old Republic to Hall CA-NV, LLC Counsel | HALL013284-HALL013285 |
| Hall 23 | March 2017 Invoice of Coats Rose to Hall | HALL013286-HALL013292 |
| Hall 24 | May 2017 - January 2018 Invoices of Gardere Wynne Sewell, LLP to Hall | HALL013293-HALL013393 |
| Hall 25 | July 2017, August 2017, January 2018, and February 2018 Invoices of Gardere Wynne Sewell LLP to Hall | HALL013394-HALL013411 |
| Hall 26 | June 2017, July 2017, August 2017, September 2017 and December 2018 Invoices of Fahrendorf, Viloria, Oliphant & Oster, LLP to Hall | HALL013412-HALL013462 |
| Hall 27 | March 2018 - May 2020 Invoices of Foley Lardner LLP to Hall | HALL013463-HALL013632 |

VILORIA, OLIPHANT, OSTER & AMAN L.L.P.

ATTORNEYS AND COUNSELORS AT LAW
Office: (775) 284-8888 Fax: (775) 284-3838
P. O. BOX 62 – RENO, NEVADA 89504
327 CALIFORNIA AVENUE – RENO, NEVADA 89509

| Hall 28 | July 2020 - August 2022 Invoices of Law Office of Frank J. Wright, PLLC to Hall | HALL013633-HALL013700 |
|---|---|---|
| Hall 29 | March 2018 - December 2018 Invoices of Fahrendorf, Viloria, Oliphant & Oster, LLP to Hall | HALL013701-HALL013739 |
| Hall 30 | January 2019 - August 2022 Invoices of Viloria, Oliphant, Oster & Aman, LLP to Hall | HALL013740-HALL013876 |
| Hall 31 | Invoice Summary | n/a |

1) Ladera objects to Hall 1-31 as evidence of purported damages because Hall never provided a computation of its alleged damages as required by Fed. R. Civ. P. 26(a)(1)(A)(iii).

2) Ladera objects to Hall 21-22 as hearsay.

3) Ladera objects to Hall 23-31 because they were not provided prior to the close of discovery.

4) Ladera objects to Hall 31 because Ladera saw it for the first time on the afternoon of October 11, 2022 – the day this pretrial order was due. Ladera objects to Hall 31 as it is based on hearsay and time entries that should not be charged to Ladera. Moreover, Ladera has had no opportunity to assess its accuracy.

**(9) A statement by each party of whether they intend to present evidence in electronic format to jurors for purposes of jury deliberations. Parties should consult the court's website or contact the assigned judge's courtroom administrator for instructions on how to prepare evidence in electronic format and other requirements;**

Not Applicable; No Jury Demand.

**(10) A statement by each party identifying any depositions intended to be offered at the trial, except for impeachment purposes, and designating the portions of the deposition to be offered;**

Ladera intends to offer the 9/3/2019 Deposition Transcript of Eric Goldberg, specifically pgs. 33-70, 74-77.

**(11) A statement of the objections, and the grounds for them, to deposition testimony the opposing party has designated;**

None.

**(12) A list of witnesses, with their addresses, who may be called at the trial. The list may not include witnesses whose identities were not, but should have been, revealed in response to permitted discovery unless the court, for good cause and on such conditions as are just, orders otherwise; and**

ATTORNEYS AND
COUNSELORS AT LAW
Office: (775) 284-8888 Fax: (775) 284-3838
P. O. BOX 62 – RENO, NEVADA 89504
327 CALIFORNIA AVENUE – RENO, NEVADA 89509

VILORIA,
OLIPHANT,
OSTER &
AMAN L.L.P.

Michael Jaynes, *Former President of Hall Structured Finance*
c/o Counsel for Hall CA-NV, LLC

Frank J. Wright, Esq.
12222 Merit Drive, Suite 1700
Dallas, TX 75251-2269

Nathan J. Aman, Esq.
P.O. Box 3677
Reno, Nevada  89505

James Pickett
c/o Counsel for Ladera

Jeffery Pickett
c/o Counsel for Ladera

**(13) A list of motions in limine filed, if any.**

Hall has not yet filed, but intends to file, at least the following motion in limine:

1)   Motion in limine to exclude Ladera's evidence on matters already decided by the summary judgment orders of this Court (ECF Nos. 157 and 171) to prevent Ladera from improperly re-litigating the findings and holdings of this Court determined by those orders.

Ladera has not yet filed, but intends to file, at least the following motions in limine:

1)   Motion in limine to exclude all evidence of Hall's damages for failure to provide a computation of each category of damages as mandated by Fed. R. Civ. P. 26(a)(iii) and for failure to provide or allow inspection of the documents supporting its claimed damages prior to the close of discovery.

2)   Motion in limine to exclude evidence of how much Hall is allegedly owed on its Senior Loan since Hall did not provide such a computation prior to the close of discovery, and to clarify that any title insurance proceeds obtained from Ladera can be used only to satisfy Borrower's indebtedness to Hall – not to pay Hall's alleged attorneys' fees incurred in connection with Ladera.

ATTORNEYS AND
COUNSELORS AT LAW
Office: (775) 284-8888 Fax: (775) 284-3838
P. O. Box 62 – Reno, Nevada 89504
327 California Avenue – Reno, Nevada 89509

VILORIA,
OLIPHANT,
OSTER &
AMAN L.L.P.

3) Motion in limine to exclude evidence of Hall's attorneys' fees incurred in the bankruptcy proceedings because Hall should have moved for attorneys' fees *in that action* rather than bring a separate lawsuit claiming those attorneys' fees as damages.

4) Motion in limine to exclude evidence of Hall's attorneys' fees in this case as premature and contrary to Fed. R. Civ. P. 54(d)(2)(A).

### OFFERED TRIAL DATES

The attorneys offer these three trial dates:

January 10, 2022          January 17, 2022          January 24, 2022

It is expressly understood by the undersigned that the court will set the trial of this matter on one of the agreed-upon dates if possible; if not, the trial will be set at the convenience of the court's calendar.

### TIME OF TRIAL

The parties estimate that the trial will take a total of 3 days.

**DATED** this 11ᵗʰ day of October, 2022.

**VILORIA, OLIPHANT,
OSTER & AMAN L.L.P.**

By: */s/ Nathan J. Aman, Esq.*
Nathan J. Aman, Esq.
Nevada Bar No. 8354
P.O. Box 62
Reno, Nevada 89504
(775) 284-8888
(775) 284-3838 - fax
Email: naman@renonvlaw.com

and

**LAW OFFICES OF
FRANK J. WRIGHT, PLLC**

Frank J. Wright, Esq.
TX Bar No. 22028800
*(pro hac vice)*

ATTORNEYS AND
COUNSELORS AT LAW
Office: (775) 284-8888 Fax: (775) 284-3838
P. O. Box 62 – Reno, Nevada 89504
327 California Avenue – Reno, Nevada 89509

VILORIA,
OLIPHANT,
OSTER &
AMAN L.L.P.

12222 Merit Drive, Suite 1700
Dallas, TX 75251-2269
Telephone (214) 935-9100
Email:  frank@fjwright.law

**Counsel for HALL CA-NV, LLC**

**DATED** this 11th day of October, 2022.

**LEWIS ROCA ROTHGERBER
CHRISTIE LLP**

By: */s/ Dale Kotchka-Alanes*
Dale Kotchka-Alanes, Esq.
Nevada Bar No. 13168
Brian D. Blakley, Esq.
Nevada Bar No. 13074
3993 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada 89169
(702) 949-8200
Email: dkotchkaalanes@lewisroca.com
        bblakley@lewisroca.com

Counsel for **LADERA DEVELOPMENT,
LLC**

**ACTION BY THE COURT**

This case is set for bench trial on the fixed/stacked calendar on Monday, May 22, 2023, at 8:30 a.m. and calendar call will be held on Monday, May 1, 2023, at 10:00 a.m. in Reno Courtroom to be determined before District Judge Robert C. Jones

UNITED STATES DISTRICT JUDGE

DATED: November 28, 2022

ATTORNEYS AND
COUNSELORS AT LAW
Office: (775) 284-8888 Fax: (775) 284-3838
P. O. BOX 62 – RENO, NEVADA 89504
327 CALIFORNIA AVENUE – RENO, NEVADA 89509

VILORIA,
OLIPHANT,
OSTER &
AMAN L.L.P.

**CERTIFICATE OF SERVICE**

Pursuant to NRCP 5(b), I certify that I am an employee of the law firm of LEWIS ROCA ROTHGERBER CHRISTIE LLP, and that on the date shown below, I caused service of a true and correct copy of the attached:

**(PROPOSED) JOINT PRETRIAL ORDER**

to be completed by:

  X    electronic service upon electronically filing the within document with CM/ECF system.

addressed to:

| | |
|---|---|
| Nathan J. Aman, Esq.<br>VILORIA, OLIPHANT & OSTER &<br>AMAN LLP<br>P.O . Box 62<br>Reno, NV 89504<br>Tel: (775) 284-8888<br>Email: naman@renovnlaw.com<br><br>*Attorneys for Plaintiff/Counterdefendant* | Frank J. Wright, Esq.<br>*(by pro hac vice)*<br>LAW OFFICES OF FRANK WRIGHT,<br>PLLC<br>2323 Ross Ave., Suite 730<br>Dallas, TX 75201<br>Tel: (214) 935-9100<br>Email: frank@fjwright.law<br><br>*Attorneys for Plaintiff/Counterdefendant* |

DATED this 11th day of October, 2022.


/s/  *Jessie M. Helm*
An employee of Lewis Roca Rothgerber Christie LLP