# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

HALL CA-NV, LLC, a Texas Limited Liability Company,

    Plaintiff,

v.

LADERA DEVELOPMENT, LLC, a Nevada Limited Liability Company, et al.

    Defendants.

Case No. 3:18-CV-00124-RCJ-CSD

**ORDER**

Following the trial held May 22 – 24, 2023, the Court entered findings of fact and conclusions of law on the record at the conclusion of trial. Those findings of fact and conclusions of law are incorporated in this Order as the Court set forth at the conclusion of trial. The following findings of fact and conclusions of law supplement and memorialize the findings of fact and conclusions of law that the Court made at the conclusion of trial.

///

///

///

## I.  FINDINGS OF FACT

The Court makes the following findings of fact:

This matter arises out of a failed venture that filed for bankruptcy. Cal-Neva Lodge, LLC ("Borrower") previously owned a piece of property that operated as a resort hotel known as the Cal-Neva Lodge ("the Property"). Borrower wanted to renovate the Property with a loan from Hall CA-NV, LLC ("Plaintiff"). Borrower committed to a $29,000,000 loan from Plaintiff. While Borrower and Plaintiff negotiated the terms of the loan, Borrower worked with Ladera Development, LLC ("Defendant") to secure an additional $6,000,000 in financing through a mezzanine loan. Borrower and Defendant agreed to the loan terms.

After Borrower agreed to both loans, Plaintiff and Defendant agreed to a separate agreement ("Intercreditor Agreement") that classified Plaintiff's loan as senior to Ladera's loan. Importantly, the terms of the Intercreditor Agreement stated in part:

1. "Junior Lender shall not in any manner interfere with Senior Lender's security interests in the Property unless and until all of the Senior Debt is no longer outstanding."
2. "Junior Lender agrees that it will not at any time contest the validity, perfection, priority or enforceability of any of the Senior Debt, any of the Senior Loan Documents, or any of the liens and security interests of Senior Lender in the Property or other collateral securing the Senior Debt."
3. "[Junior Lender will] not take any action or vote in any way so as to (A) contest the legality, validity or enforceability of this Agreement or any Senior Loan Document . . . ."
4. "Notwithstanding anything to the contrary contained in this Agreement, during the continuance of any Insolvency Proceeding, the Senior Debt shall first be indefeasibly paid and satisfied in full in cash before any payment or distribution of cash or other property is made upon the Junior Debt. In any Insolvency Proceeding, any payment or distribution which may be payable or deliverable with respect to the Junior Debt shall be paid or delivered directly to Senior Lender for application to the payment and satisfaction of the Senior Debt unless and until the Senior Debt shall have been indefeasibly paid and satisfied in full in cash."
5. "If applicable, Junior Lender agrees to vote for any plan of reorganization approved by Senior Lender in respect of Borrower in any Insolvency Proceeding respecting Borrower; provided, however, that Senior Lender agrees not to unreasonably withhold or delay its consent to Junior Lender's voting for a different plan of reorganization if (i) the different plan is at least as beneficial to Senior Lender (including without limitation with respect to Senior Lender's payment, lien and remedy rights thereunder) as the plan approved by Senior Lender, and (ii) Junior Lender agrees in writing (A) that any payments received by Junior Lender by virtue of such Insolvency Proceeding will be held by Junior Lender in trust for the benefit of Senior Lender until such time as the Senior Debt is satisfied in full, and (B) if the Senior Debt will not be satisfied in full by

virtue of such Insolvency Proceeding, promptly pay over to Senior Lender the payments so held in trust up to the amount of the deficiency."

6. "Junior Lender agrees not to oppose any post-petition motion filed or supported by Senior Lender, including, without limitation, motions for adequate protection with respect to the Senior Debt, for relief from stay, or for Borrower's application of cash collateral for use in the ordinary course of its business or for postpetition borrowing from Senior Lender."

7. "Junior Lender shall release insurance proceeds and condemnation awards, to be applied to the restoration of the Property or to payment of the indebtedness evidenced and secured by the Senior Loan Documents, in the same manner as Senior Lender, under, the terms and provisions of the Senior Loan Documents, so that no conflicts are created by and among Senior Lender, Junior Lender, or others in the application of insurance proceeds or condemnation awards. Senior Lender has the sole and exclusive right, as against Junior Lender, to adjust settlement of insurance claims under the insurance policies in the event of any covered loss or destruction. All proceeds of such insurance related to the Property shall inure to the Senior Lender, and Junior Lender shall cooperate (if necessary) in a reasonable manner in effecting the payment of such insurance proceeds to Senior Lender. In the event Senior Lender permits the Borrower to utilize the proceeds of insurance to replace any part of the Property, the consent of Senior Lender shall be deemed to include the consent of Junior Lender."

After the parties agreed to the Intercreditor Agreement, both parties individually acquired insurance policies from Old Republic National Title Insurance Company ("Old Republic"). The insurance policies contained different terms, but both sought to cover the parties' respective interests. Plaintiff purchased an insurance policy that did not cover any superior mechanics' lien arising from any prior work done on the Property. However, Defendant obtained an insurance policy that did cover mechanics' liens.

In early 2016, Plaintiff declared default on the loan it made to Borrower because Plaintiff determined that Borrower had not maintained its financial obligations. Subsequently, the builder hired for the renovation, Penta, filed suit against Plaintiff in state court, claiming that it had a mechanic's lien. The state court case merged with Borrower's bankruptcy case once Borrower filed for Chapter 11 Bankruptcy on July 28, 2016. The Bankruptcy Court determined that Penta did have a mechanics' lien on the property.

Approximately one year after the bankruptcy case started, Defendant filed a plan of liquidation for Borrower. Plaintiff opposed Defendant's liquidation plan because the plan allowed

Defendant to collect before Plaintiff's debts were paid. Allowing Defendant to collect before Plaintiff received payment for all debts ran counter to the Intercreditor Agreement. Plaintiff sent Defendant a demand letter that asked Defendant to withdraw their plan and support the committee plan ("Lawrence Plan"). Plaintiff stated that it did not unequivocally support the Lawrence Plan, but that it was working with Lawrence Investments, Inc., and other committee members to amend the Lawrence Plan.

Instead of working with Defendant to come to a settlement on Defendant's plan, Plaintiff filed in state court to prevent Defendant from presenting the plan to the Bankruptcy Court. The state court granted Plaintiff's request for a TRO and Ladera withdrew its plan. Ladera filed a notice of removal to remove the state court action back to the Bankruptcy Court. Upon removal, the Bankruptcy Court dissolved the TRO and admonished Plaintiff's counsel for filing in state court. Subsequently, Plaintiff filed for voluntary dismissal of the state court action.

The bankruptcy committee filed an additional plan that Plaintiff opposed. The Bankruptcy Court approved the plan over Plaintiff's objection. Plaintiff filed an objection and received a stay on the plan. After witnessing the parties dispute over the plan, the Bankruptcy Court ordered the parties to enter mediation. That mediation led to a $15,000,000 "Lien Litigation Reserve" to provide the lenders with a percentage of their interests. However, Defendant was excluded from engaging in negotiations with the other creditors on how to best split up the Lien Litigation Reserve. For that reason, Defendant did not receive any of the Lien Litigation Reserve. Plaintiff received $27,400,000 after the bankruptcy settlement. The parties that received proceeds from the Lien Litigation Reserve moved for settlement of the bankruptcy dispute after they split up the Lien Litigation Reserve.

Plaintiff sued to recover on Defendant's insurance policy because Plaintiff's insurance policy did not cover the mechanics' lien. Plaintiff claimed that it reserved the right under the

Intercreditor Agreement to receive all the proceeds from Defendant's insurance policy. Plaintiff lost at the district court level and on appeal with the circuit court. But, Defendant still has not collected on the insurance policy.

Plaintiff then brought this Action, alleging that Defendant breached the Intercreditor Agreement when Defendant opposed the bankruptcy plan. Plaintiff's damages included the amount that it was still owed under the loan that it made Borrower. Essentially, Plaintiff sought to recover on Defendant's insurance policy through the breach of contract claim. Plaintiff also sought to recover attorneys' fees from this Action, the state action that Plaintiff voluntarily dismissed, and the bankruptcy dispute.

This Court determined in the Order on summary judgement that Defendant breached the Intercreditor Agreement. Defendant breached when it supported the liquidation plan that allowed for Defendant to obtain some of the funds that would have otherwise gone to satisfy Plaintiff's debts. The Court determined at trial that Defendant did not breach when it defended its interest in the insurance policy. Accordingly, Plaintiff is entitled to damages on the breach of the Intercreditor Agreement.

Plaintiff claimed that it was owed $32,677,957.75. That number included the Principal ($23,067,058.03), Contract Interest ($4,545,526.92), Default Interest ($2,304,654.21), Post-Petition Protective Advances ($1,137,939.01), Post-Petition Protective Advances Contract Interest ($70,648.18), Post-Petition Protective Advances Default Interest ($36,030.71), Capital One Advance ($655,745.36), Capital One Contract Interest ($3,275.89), Capital One Default Interest ($1,639.37), Loan Exit Fee ($290,000.00), and the Prepayment Fee ($565,440.08). However, the Court determined that the Loan Exit Fee and the Prepayment Fee should not be applied to the balance due. With that being said, the Court did a calculation to determine the final amount that Plaintiff was owed before any payments and reductions:

| | |
|---|---:|
| Principal | $23,067,058.03 |
| Contract Interest | $4,545,526.92 |
| Default Interest | $2,304,654.21 |
| Post-Petition Protective Advances | $1,137,939.01 |
| Post-Petition Protective Advances Contract Interest | $70,648.18 |
| Post-Petition Protective Advances Default Interest | $36,030.71 |
| Capital One Advance | $655,745.36 |
| Capital One Contract Interest | $3,275.89 |
| Capital One Default Interest | $1,639.37 |
| **Amount Owed to Plaintiff** | **$31,822,517.68** |

As mentioned previously and at trial, Plaintiff admitted that it received $27,400,000 after the bankruptcy. The amount owed was further reduced by $739,000 for Furniture, Fixtures, and Equipment and again by $101,519.35 from the Lien Litigation Reserve. The final amount owed after payments and reductions was:

| | |
|---|---:|
| Payment After Bankruptcy | $27,400,000.00 |
| Lien Litigation Reserve | $101,000.00 |
| Furniture, Fixtures, and Equipment | $739,000.00 |
| **Payments and Reductions** | **$28,240,000.00** |
| **Amount Owed to Plaintiff minus Payments and Reductions** | **$3,582,517.68** |

Plaintiff was owed $3,582,517.68 on its loan after receiving payments and reducing the amount owed by the economic realities. However, Plaintiff's damages are not the entire amount owed under the Intercreditor Agreement.

The Court is granting Plaintiff damages in the form of a subrogation claim in the amount of $3,000,000. As pointed out in the Court's ruling at trial, Plaintiff's calculations were suspect. Plaintiff failed to provide an itemization of the whole debt. Additionally, the Court has significant concerns with Plaintiff overcharging on the debt. Defendant repeatedly pointed out

Plaintiff's willingness to overcharge on the amount owed. For these reasons, the Court grants Plaintiff and Defendant an equal interest in Defendant's insurance policy. Neither interest shall take priority over one another. On a $6,000,000 title policy, the parties shall have equal priority. Accordingly, if the ultimate recovery on the policy is above or below $6,000,000, the parties will take equal, proportional shares.

## II. CONCLUSIONS OF LAW

The Court makes the following conclusions of law:

Plaintiff's ability to recover attorneys' fees was the only legal question left for trial. Plaintiff argued that it was entitled to attorneys' fees for this Action, the state action that Plaintiff voluntarily dismissed, and the bankruptcy dispute. Plaintiff brought this Action as a breach of contract claim under the Intercreditor Agreement. Therefore, Plaintiff needed to show that the breach caused Plaintiff to incur attorneys' fees.

### A. Attorneys' Fees in the State Court Action

Plaintiffs seeking damages on a breach of contract claim must provide evidence that the breach of contract caused the damages. *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1342 (Fed. Cir. 2013). At trial, plaintiffs must produce evidence "to prove damages sustained on the breach" to receive damages from the court. *Id.*

Plaintiff did not provide any evidence showing that the breach of the Intercreditor Agreement caused Plaintiff to incur attorneys' fees. Plaintiff had no reason to file the state court action to prevent Defendant from filing a disclosure statement and plan. Defendant filed a disclosure statement and plan that Plaintiff believed would violate the Intercreditor Agreement, but Plaintiff sent Defendant a demand letter to withdraw the filing. Instead of working with Defendant to discuss the alleged violation, Plaintiff went to the state court to seek a temporary restraining order. Defendant could not support a plan that allowed Defendant to receive proceeds

before Plaintiff was paid. However, the Intercreditor Agreement did not bar Defendant from filing a disclosure statement and plan, even the state court judge and, later, the bankruptcy judge pointed this out. But, that is exactly what Defendant did, file a disclosure statement and plan.

Although Defendant did not violate the Intercreditor Agreement when it made the filing, Defendant withdrew the plan shortly after Plaintiff filed the state court action. There was no evidence proving that Defendant was unwilling to withdraw the plan based on the alleged violation. Instead, Plaintiff took unneeded judicial action. The Court cannot grant attorneys' fees for the state court action because Plaintiff could not show that filing the action was caused by the breach.

### B. Attorneys' Fees in the Bankruptcy Action

Plaintiff did not present any evidence to show that the breach of the Intercreditor Agreement caused Plaintiff to incur attorneys' fees in the bankruptcy action. For the same reasons mentioned previously, Defendant is not liable for Plaintiff's actions to prevent Defendant from filing the disclosure statement and plan. Plaintiff did not present the Court with any evidence to find that the breach caused Plaintiff to incur attorneys' fees in the bankruptcy matter.

### C. Attorneys' Fees in this Matter

Finally, Plaintiff cannot recover attorneys' fees for this Action because the fees were not reasonable, and the Court doubts the legitimacy of several the charges. Parties seeking attorneys' fees must show that the fees are reasonable. *Shaw v. Am. Bank of Com.*, No. 07-22-00067-CV, 2023 WL 2933337, at *1–2 (Tex. App. Apr. 13, 2023). Plaintiff failed to provide enough evidence to convinces the Court that $1,311,000 was reasonable considering the claims that Plaintiff brought in this Action. Further, Defendant poked many holes in the invoices that Plaintiff provided to the Court. Without enough evidence to prove that the fees were reasonable, the Court cannot grant Plaintiff attorneys' fees in this Action.

### III. CONCLUSION

I THEREFORE ORDER the Clerk of the Court to enter judgment in favor of Plaintiff, Hall CA-NV, LLC, as outlined above, and close this case.

IT IS SO ORDERED this 12th day of September 2023.

_____
ROBERT C. JONES
United States District Judge